## NATIONAL LABOR RELATIONS BOARD v. BILES COLEMAN LUMBER CO.

### No. 8764.

Circuit Court of Appeals, Ninth Circuit. July 11, 1938.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Robert S. Erdahl and Bertram Edises, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

F. M. Roberts and Charles C. Hall, both of Seattle, Wash. (Weter, Roberts & Shefelman, of Seattle, Wash., of counsel), for respondent.

Herman E. Anderson, of Tacoma, Wash., and Lyle K. Summers, of Seattle, Wash. (Dent & Summers, of Seattle, Wash., of counsel), for interveners.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The National Labor Relations Board petitions this court for enforcement of its order, dated December 23, 1937, requiring the respondent Biles Coleman Lumber Company, of Omak, Washington, to cease and desist from certain unfair labor practices under the National Labor Relations Act (49 Stat. 449, 29 U.S.C.A. § 151 et seq.) and to take affirmative action designed to effectuate the policies of the Act.

In response to the Board's petition, respondent has filed an answer which expressly admits that the Board made the order here sought to be enforced, and also admits, by failing to deny, the Board's allegation that the order was made after due notice and hearing, upon a complaint duly issued, pursuant to section 10 of the National Labor Relations Act (49 Stat. 453, 29 U.S.C.A. § 160). The order does not, on its face, appear to be unlawful or improper. The answer does not challenge the Board's jurisdiction, the sufficiency of the evidence to support the findings, or the sufficiency of the findings to support the order. It does not state or attempt to state any reason why the order should not be enforced, except what was stated in the so-called affirmative defense which, in a former opinion (9 Cir., —— F.2d ——), we held was no defense and, accordingly, ordered stricken from the answer. Since the respondent has shown no reason in its answer why the order should not be enforced, certain of the issues, at least, could be decided against the Lumber Company on the pleadings.

■ However, the case was fully argued on the merits, both in the briefs and at the hearing, and the Board does not urge the absence of denials in the answer. Hence the merits are considered on the theory that the answer be deemed amended to raise the argued issues.

■ The bar is cautioned that, while the Act does not require common law formality of pleading, there must be the substantial elements of due process. Cf. our first opinion in this case. 9 Cir., 98 F.2d 16. Obviously, the requirement rests as much on the one party as the other. So far as concerns the enforcement of the Board's order this is a nisi prius tribunal, and the resistive respondent by its answer, rather than by brief, should raise the issue as to any allegation of the petition which is contested.

Pursuant to the charges filed against respondent on behalf of Carpenters' Union No. 2570 of Omak, Washington, Lumber and Sawmill Workers, hereinafter called the Union, a complaint was issued by the Board and a hearing held before a Trial Examiner from May 17 to June 14, 1937. On July 20, the case was transferred to the Board where respondent presented its cause by brief. The order followed.

The Board found that the respondent was a corporation of the State of Washington, having its principal place of business in Omak. It is engaged in the business of logging timber and operating a sawmill factory. At least 75 percent of its manufactured products are shipped to points outside the State of Washington. It employs approximately 600 men.

The Board found that the appropriate unit for collective bargaining (section 9(b), 29 U.S.C.A. § 159(b) was composed of the employees of respondent at its plant and sawmill, including the "lower end section crew" which worked out of Omak, the seat of the plant and sawmill, on a portion of the respondent's logging railroad, and excluding the loggers in the woods, super-

visory and clerical employees, and janitors and watchmen at the plant and sawmill. It found that the Union included a clear majority of the employees in the appropriate unit.

It was found further that on April 27, 1936, the respondent refused to bargain collectively with the representatives of the Union, and restrained employees in the right to bargain collectively through such Union in violation of section 8(1) and (5), 29 U.S.C.A. § 158(1, 5); that in consequence of such unfair labor practices a strike of respondent's plant and sawmill employees was initiated, which strike was still in progress at the time of the Board's order (according to respondent's counsel, it is still in effect at the time of the argument in this court); and that on May 8, 1936, and for several days thereafter, respondent again violated section 8(5) by refusing to bargain collectively with the Union delegates as the representative of all the employees in the unit as required by section 9(a), 29 U.S.C.A. § 159(a).

On the basis of its findings the Board ordered the respondent to cease and desist from refusing to bargain collectively with the Union "as the exclusive representative of all its employees in its sawmill, factory, powerhouse, kilns, yards, and lower end section railroad crew, excluding all the employees in the woods, supervisory officials, foremen, salesmen, clerical and office employees, watchmen and janitors", and to cease and desist from interfering with, coercing, or restraining its employees in the exercise of their rights to self-organization and collective bargaining.

It was further ordered that the respondent upon application offer reinstatement to all employees who went on strike on May 4, 1936, or thereafter, excluding those who have obtained regular and substantial employment elsewhere; discharging, if necessary, those employees who were hired to fill the places of the strikers after the strike began on May 4, 1936; that respondent make whole any loss of wages by each striking employee for the period between the time of any application for reinstatement which should be refused and the time of compliance with the reinstatement order; and that respondent, upon request, bargain collectively with the Union as to rates of pay, wages, hours and conditions of employment, etc.

We will review the findings in their order.

**The respondent and interstate commerce.** The respondent admits on this appeal that its operations substantially affect interstate commerce and that it is subject to the Act.

**The appropriate bargaining unit and the Union's majority.** Some consideration of the bargaining unit is necessary, although the respondent does not contest the finding in this respect. Section 9(b), 29 U.S.C.A. § 159(b), provides: "The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act [chapter], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

Respondent's employees may be roughly classified in two divisions: The plant and sawmill workers on one hand, and the woodsmen on the other. The logging work in the woods is carried on at distances from Omak of between 15 and 30 miles. Most of the woodsmen do not live in Omak, whereas the great majority of the plant and sawmill workers do. The Board took all these factors into consideration, plus the desires of the plant workers and loggers themselves, in making its finding as to the appropriate unit. Respondent questions the inclusion in the unit of the lower end section crew, numbering about 5 individuals. This crew lived at Omak and worked out of Omak on the logging railroad every day. Their permanent location plus their personal desires in the matter are sufficient to sustain the Board's finding in this respect.

The respondent does not contest the finding that the Union was composed of a clear majority of employees in the appropriate unit, regardless of whether or not the section crew was included.

**The unfair labor practices.** The gist of the Board's charges is that on two different occasions there was a refusal on the part of respondent to bargain collectively with authorized representatives of its employees and, coincidentally with such refusal, an interference with and coercion of respondent's employees in the exercise of their collective bargaining rights.

The first refusal of respondent to bargain collectively, the Board found, took place directly after April 27, 1936, on which

date the Union, having secured a majority in the unit, presented a written collective bargaining contract to the respondent. The proposed contract provided that the Union be recognized as "the sole collective bargaining agency" without specifying the unit for which it assumed to act. There was nothing in the contract from which it could be determined whether it assumed to speak for the plant and sawmill employees only or purported to include the woodsmen also.

The proposed contract listed a number of definite demands as to hours, wages, time off, etc., and concluded with a direction to "Send reply within five (5) days to" the Recording Secretary of the Union.

Two days later the respondent's president called all the sawmill and factory employees together in a mass meeting. He told them, in substance, that he had been presented with a list of demands from the "so-called" union; advised them it was impossible to meet any of the demands; stated that the workers would be better off if they paid no heed to outside organizers; told them his answer was final, that they had best go home and talk it over with their wives.

There is sufficient evidence to warrant the Board's finding that this conduct on the part of respondent was a refusal to bargain collectively within the meaning of section 8(5). Collective bargaining does not require the employer to reach an agreement. It does require sincere negotiations with the representatives of the employees. Jeffery-De Witt Insulator Co. v. National Labor Relations Board, 4 Cir., 91 F.2d 134, 139, 112 A.L.R. 948; National Labor Relations Board v. Sands Mfg. Co., 6 Cir., 96 F.2d 721, 725. Here, in effect, the employer says to his employees, "I will not treat with your representatives; their demands are impossible; furthermore if you attempt to deal with me through them you will lose your individuality; forget about it and go home."

█ This is not collective bargaining. Nor is it a defense to point out that the Union, in presenting its proposed contract, did not claim to be the representative of the sawmill and factory employees only, as distinguished from all respondent's workers. Respondent made no objection to the contract on the basis of the propriety of the unit for which it was being presented. The Board was entitled to draw the inference that respondent's refusal to negotiate with the Union was motivated, not by doubt as to the appropriate unit, but by a rejection of the collective bargaining principle. National Labor Relations Board v. Remington Rand, 2 Cir., 94 F.2d 862, 868.

Some contention was made in the briefs that the presentation of the proposed contract was not as a part of negotiations for bargaining, but on the argument it was admitted that the contract terms were proposed to be met with counter proposals by the employer.

We hold, therefore, that there is sufficient evidence to support the Board's finding of violation of section 8(5) by a refusal to bargain collectively on and after April 27, 1936.

█ The Union called a strike on May 4, 1936, due to this refusal to bargain, and the respondent's plant remained closed until June 9, when it was opened with strikebreakers. Abortive negotiations between representatives of the Union (strike committee) and the respondent went on for a period of two weeks, beginning May 8. On that date the Union again presented a series of demands, specifying itself as the representative of the plant and sawmill employees. The respondent, by direct communication with the strike committee and by public advertisements, met this series of demands and all ensuing demands of the committee with the statement that it would recognize the Union as the representative *of its members only.*

This consistently maintained position on the part of respondent was contrary to section 9(a) of the Act, 29 U.S.C.A. § 159(a), which provides:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of *all the employees* in such unit for the purposes of collective bargaining * * *." (Emphasis supplied.)

The Board was therefore warranted in finding a second violation of section 8(5) by refusal to bargain collectively, within the meaning of the Act, after the strike commenced on May 4.

█ The refusal to bargain causing a strike together with respondent's continued refusal to end the strike save on terms which denied collective bargaining was sufficient evidence to warrant the Board's finding that respondent interfered with, restrained and coerced its employees in the

exercise of their statutory rights, thus violating section 8(1) of the Act, 29 U.S.C.A. § 158(1).

 **The Board's order.** The order of the Board, requiring respondent to cease and desist from the specified violations of section 8, plus the affirmative requirements of recognition of the Union, plus reinstatement with back pay from the date of application, is justified by the findings. The respondent admitted at the hearing that if the record showed any unfair labor practice, there should be an order for reinstatement. However, it objects to the order made insofar as it applies to non-Union workers who went on strike on May 4 or joined the strike later. Particular objection is made to the order requiring reinstatement of two of respondent's foremen who walked off with the others, but who, by reason of their supervisory positions or location in the woods, could not have belonged to the Union even had they so desired.

The order was proper. Section 10(c), 29 U.S.C.A. § 160(c), authorizes the Board to require such affirmative action, "including reinstatement of employees with or without back pay, as will effectuate the policies of this Act [chapter]." The term "employees", as defined in section 2(3), 29 U.S.C.A. § 152(3), includes "any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice." The reinstatement remedy is designed to vindicate the policy of the Act and to compel observance of its purpose and spirit. There is nothing in the Act which limits the reinstatement remedy to members of labor organizations or even to striking employees who are primarily and directly aggrieved by an unfair labor practice which causes a strike. An entire crew, union or non-union, may strike by reason of an unfair labor practice involving the discharge of only one man. It could hardly be contended that reinstatement of the entire crew in such case would not be a reasonable measure for effectuating the policies of the Act, under section 10(c). We need not consider the ultimate limits of the Board's authority to order reinstatement of strikers against whom an unfair labor practice is not directly committed. It is sufficient here to hold that any of these 600 employees of this single employer who strikes by reason of unfair labor practices directed against any of the 600 has a sufficiently immediate relation to such practices to warrant the Board in requiring his reinstatement.

 The respondent complains of that portion of the order which requires reinstatement "upon application" of those striking employees who have not obtained regular and substantial employment elsewhere, in that it places no limit on the time within which such application may be made. We conceive the order to mean that the application must be made within a reasonable time from the Board's order as a prerequisite of the respondent's duty in this respect. Inasmuch as the strike is still in progress, the setting of a definite time limit to such applications was not feasible at the time of the issuance of the order.

The Board's petition for enforcement is granted.