## ART METALS CONST. CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 163.

Circuit Court of Appeals, Second Circuit.
Feb. 26, 1940.

Slee, O'Brian, Hellings & Ulsh and Dana B. Hellings, all of Buffalo, N. Y., for petitioner.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp, Asst. Gen. Counsel, all of Washington, D. C., and Ernest A. Gross, Richard C. Barrett, and Leonard Appel, all of Washington, D. C., for respondent.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This cause comes before us upon a petition by an employer to review an order of the National Labor Relations Board, which directed it (1) to bargain collectively with a union of its "production and maintenance employees", (2) not to interfere with the right of self-organization, (3) in case any understanding is reached with them, to put it in writing; and (4) to post the usual notice of compliance. A copy of the order is set forth in the margin[1]. The petitioner argues that the evidence did not justify the facts found; and that, even if it did, the order went beyond the Board's powers. It is not disputed that the employer was engaged in interstate commerce in such sense as to be subject to the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; that the approximate number of its employees in 1937, the year in question, was 897; and that its production and maintenance employees constituted an appropriate unit for collective bargaining. The Board found that 823 of these employees were members of the union on July first, 1937; that 803 of them were such on August first, and that more than 500 continued to be members during all the rest of the year. This finding depended upon the testimony of one Voght, financial secretary of the union, who kept its financial record, which purported to contain the names of all members in good standing; that is to say, those who were not more than three months in arrears for dues. Voght testified that the members paid dues direct to him, that he entered their names in a cash book at the time, and then transferred them into the ledger, which he produced. We cannot see any basis to challenge the competency of this evidence, or its sufficiency to support the finding, even though common-law evi-

---

[1] "Upon the basis of the above findings of fact and conclusions of law, and pursuant to Section 10(c) of the National Labor Relations Act, the National Labor Relations Board hereby orders that Art Metal Construction Company, Jamestown, New York, and its officers, agents, successors, and assigns, shall:

"1. Cease and desist from:

"(a) Refusing to bargain collectively with International Association of Machinists, Local No. 1559, as the exclusive representative of all the production and maintenance employees employed at its Jamestown, New York, plants, excluding supervisory and clerical employees;

"(b) In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining, or other mutual aid and protection, as guaranteed by Section 7 of the Act.

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Upon request, bargain collectively with International Association of Machinists, Local 1559, as the exclusive representative of all its production and maintenance employees employed at its Jamestown, New York, plants, excluding supervisory and clerical employees, in respect to rates of pay, wages, hours of employment, and other conditions of employment, and, if an understanding is reached on any such matters, embody such understanding in a signed agreement, if requested to do so by International Association of Machinists, Local 1559;

"(b) Post immediately notices to its employees in conspicuous places throughout its Jamestown, New York, plants, stating (1) that it will cease and desist as set forth in 1 (a) and (b) above, and (2) that it will take the affirmative action set forth in 2(a) above;

"(c) Maintain such notices for a period of at least sixty (60) consecutive days from the date of the posting;

"(d) Notify the Regional Director for the Third Region in writing within ten (10) days from the date of this Order what steps the respondent has taken to comply herewith.

"And it is further ordered that the petition for investigation and certification of representatives filed by International Association of Machinists, Local 1559, be, and it hereby is, dismissed."

dence alone were competent, which is not the case, § 10(b), 29 U.S.C.A. § 160(b). The Board also found that on July 24, 1937, and at all times thereafter, the petitioner refused to bargain collectively with the union, because it refused to enter into a written contract, embodying whatever agreements might be reached. This the petitioner admits, but in excuse urges, first, that it did not know that the union represented a majority of its employees, and second, that the statute did not require it to put agreements into writing.

■ As to the first, the evidence is clearly against it. The superintendent of its Jamestown plant, where the negotiations took place, admitted at the hearings that at the meeting of July 24, 1937, Schott, a representative of the union, asked whether the company officials recognized the union committee as a bargaining agency, and that he, the superintendent, answered that they assumed that that was true and were dealing with the committee for that reason. Moreover, the written agreement, presented by the union at that time, purported to recognize the union as the sole bargaining agency of its employees. There can therefore be no doubt that the employer understood that it was dealing with those who at least claimed to be acting for a union of its employees, and from this the implication was that the union also claimed to represent a majority. The employer took the risk of refusal, if the claim turned out to be well-founded. National Labor Relations Board v. Remington-Rand, Inc., 2 Cir., 94 F.2d 862, 868. The important question is whether its conceded refusal to put the terms of any oral agreement in writing, was a refusal to bargain collectively within § 8(5) of the act, 29 U.S.C.A. § 158(5).

■ The argument on this point rests upon the admitted truth that the act does not force the parties to come to any agreement at all; for, although an employer must honestly negotiate with his employees collectively, that is as far as he need go. But if, the argument runs, he is forced to make it a term of any oral agreement that it shall be put into writing, he loses that absolute freedom in negotiation which he had at common law, and which Congress meant to preserve to him. Inland Steel Company v. National Labor Relations Board, 7 Cir., 109 F.2d 9. It is indeed true, and for that matter a truism, that a stipulation in an oral contract that it shall be put into writing is one of its terms, and that if an employer must put it in, he is not free pro tanto. But he is no longer wholly free anyway; before the act he was not obliged to bargain with his employees collectively; he was at liberty to refuse to negotiate with them at all, or otherwise than severally. The act impaired that freedom; it meant to give to the employees whatever advantage they would get from collective pressure upon their employer; and the question here is what are the fair implications of that grant. They should include whatever is reasonably appropriate to protect it, and no one can dispute that a permanent memorial of any negotiation which results in a bargain, is not only appropriate, but practically necessary, to its preservation; it is hardly necessary to observe that without it the fruits of the privilege are exposed to the sport of fugitive and biased recollection. The purpose of a contract is to define the promised performance, so that when it becomes due, the parties may know the extent to which the promisor is bound; and it is the merest casuistry to argue that the promisor's freedom to contract includes the opportunity to put in jeopardy the ascertainment of what he has agreed to do, or indeed whether he has agreed to anything at all. The freedom reserved to the employer is freedom to refuse concessions in working conditions to his employees, and to exact concessions from them; it is not the freedom, once they have in fact agreed upon those conditions, to compromise the value of the whole proceeding, and probably make it nugatory.

■ Article I (b) of the order rests upon the premise that an unfair labor practice under § 8(5) is also an unfair practice under § 8 (1), and that is contrary to our ruling in National Labor Relations Board v. Remington-Rand, Inc., 2 Cir., 94 F.2d 862, 869, which the Board has since then consistently refused to follow. Globe Cotton Mills v. National Labor Relations Board 5 Cir., 103 F.2d 91, accords with us, but National Labor Relations Board v. Biles-Coleman L. Co., 9 Cir., 98 F.2d 18, 22, 23 is contrary. Except for the new light now thrown upon the matter, we should still be unconvinced; but we learn that both the Committee of the House and the Committee of the Senate in reporting the bill declared that §§ 8(2), 8(3), 8(4) and 8(5), were species of the generic unfair labor practice defined in § 8(1). Certainly the language does not so plainly forbid that construction that we must disregard it; on

the contrary we consider it authoritative. For that reason we overrule our holding—it was in no sense a dictum—in National Labor Relations Board v. Remington-Rand, Inc., supra, 94 F.2d 862, 869. The petition does not challenge the generality of the language used in Article I (b) of the order ("In any other manner", etc.,) and for that reason we do not consider whether it should have been limited to the single unfair practice found. Article I(b). is affirmed.

The petitioner also objects to Article II (b) insofar as it compels it to post notices in its plant that it will "cease and desist" from doing what the earlier parts of the order forbid. It argues that by this the Board seeks to extort from it a confession that it has been guilty of unfair labor practices in the past, and it denies any guilt. Assuming that it is permissible to require it to declare publicly that it will conform in the future to what the Board directs, it insists that this goes further, because the words "cease and desist" inevitably imply that it has been doing that which it is now ordered to stop. The circuit courts of appeals have divided upon this question. It is the settled rule in the Fourth Circuit that such a declaration cannot be compelled. National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951, 958, 959; National Labor Relations Board v. Eagle Mfg. Co., 4 Cir., 99 F.2d 930, 932; Virginia Ferry Corp. v. National Labor Relations Board, 4 Cir., 101 F. 2d 103, 106; National Labor Relations Board v. Nebel Knitting Co., 4 Cir., 103 F. 2d 594. (We cannot believe that National Labor Relations Board v. Asheville Hosiery Co., 4 Cir., 108 F.2d 288, 293, was intended sub silentio to overrule four deliberate rulings all made within eighteen months.) The Sixth accords with the Fourth. National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678, 681. So does the Tenth. Swift & Co. v. National Labor Relations Board, 10 Cir., 106 F.2d 87, 94. On the other hand the Fifth dissents. National Labor Relations Board v. Brown Paper Mill Co. Inc., 5 Cir., 108 F.2d 867. In National Labor Relations Board v. Falk Corporation, 7 Cir., 102 F.2d 383, 390, the Seventh Circuit also refused to follow the Fourth, and at first affirmed the Board's order. Later it changed its mind, sua sponte, upon another question in the case—the status of a company union—and modified its ruling, necessarily changing the provisions for posting, though not the words, "cease and desist". 7 Cir., 106 F.2d 454. The Board applied for certiorari, it was allowed, and the Supreme Court reinstated the original order. National Labor Relations Board v. Falk Corp., 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. ——. From the way in which the case came up it would seem that the court could not have had this point before it, and, whether it did or not, certainly the opinion does not suggest that it meant to pass upon it. We regard the question as open, and we think that the Fourth Circuit is right.

The employer must indeed post a notice that he will conform to the Board's order; that is no longer open to dispute, and, so far as we know, no court has ever held the contrary. He must declare that he will "not refuse to bargain collectively," etc., in the words of Article I (a); and that he will not "in any other manner interfere with," etc., in words of Article I (b). But we think that to compel him to say that he will "cease and desist", necessarily imports that in the past he has been doing the things forbidden; indeed we find it hard to see how the contrary can be rationally argued. Forcibly to compel anyone to declare that the utterances of any official, whoever he may be, are true, when he protests that he does not believe them, has implications which we should hesitate to believe Congress could ever have intended. At any rate, until the Supreme Court speaks, we will not so construe the statute; nor are we disposed nicely to examine the scruples alleged; too long a history, and too dearly bought privileges, are behind such refusals. Moreover, we do not see what the words add to the effect of the notice, which must in any event be of complete compliance with the order. We cannot suppose that the Board has any interest in the precise rubric adopted; but we can very well understand the sense of outrage which anyone may feel at being forced publicly to declare that he has committed even a minor dereliction of which in his heart he does not believe himself guilty. Article II (b) of the order will therefore be modified so as to read as follows: "Post notices to its employees in conspicuous places throughout its Jamestown, New York, plants stating (1) that it will not refuse to bargain collectively with the International Association of Machinists, Local No. 1559, or in any other manner interfere with, restrain or coerce its employees, in the same words as

set forth in 1(a) and (b) above; and (2), that it will take the affirmative action set forth in 2 (a) above". In all other respects the order is affirmed; the Board may have the customary order of enforcement.

Order modified, and, as modified, affirmed.

CHASE, Circuit Judge (dissenting in part).

I concur except as to that part of the decision which holds it is an unfair labor practice for an employer to decline to sign a written contract which embodies the terms of whatever agreement may be reached as a result of the collective bargaining the statute requires. As to that, I think the recent decision of the Seventh Circuit in Inland Steel Company v. National Labor Relations Board, 7 Cir., 109 F.2d 9, is right and ought to be followed.

Were we a legislative body with power to amend the law, I should feel keenly the force of the argument that the reduction to writing of an agreement when reached would be a worthwhile means for avoiding the danger of any subsequent misunderstanding concerning the rights and duties of the parties thereunder. There may, however, be good and sufficient reasons not appearing in this record why even such legislative action would be unwise. It is significant that when Congress explored the subject matter of the relations of employees with their employers and passed the comprehensive regulatory statute known as the Wagner Act, 29 U.S.C.A. § 151 et seq., it did not see fit expressly to require that any agreement which might be reached, after the collective bargaining made compulsory upon the employer, should be put in the form of a signed written contract.

If more is at stake than merely the form a collective bargaining contract should be given to put its terms beyond danger of controversy, Congress should take such action by way of amendment as may be necessary to exercise its power for we have no right to read into the statute a mandatory provision which is not there. If only the desirability for having a ready means for preserving with accuracy the terms of such an agreement underlies this part of the order, on the theory that good faith in collective bargaining precludes an employer from doing less than sign in written form any agreement reached, our course, it seems to me, is equally plain. Nothing prevents any party from putting the terms of the agreement into any sort of memorial desired for its own use and, until there is some reason to believe that this employer will not faithfully carry out any agreement it makes, we should not gratuitously impute to it bad faith in collective bargaining, and a consequent violation of the statute, merely because it insists in effect that its pledged word, however given, will be made good. It should now be left, as the statute leaves it, at least so far as language is concerned, as free to decide how it will promise as to decide what it will promise in the light of all the circumstances which may properly influence it in making an honest effort to bargain collectively.

CLARK, Circuit Judge (dissenting in part).

I am in entire accord with the opinion herewith except for that part which modifies the Board's order for the posting of notices that the employer "will cease and desist" from refusing to bargain collectively with Local No. 1559 of International Association of Machinists and from the other unfair labor practices stated. The point here is narrow, perhaps too narrow for extended disagreement, but, if so, likewise too narrow to justify our interference with the discretion given the Board in carrying out its peculiar and onerous statutory duties, particularly in the light of recent vigorous admonitions against undue court interference with administrative discretion. Federal Communications Commission v. Pottsville Broadcasting Co., 60 S.Ct. 437, 84 L. Ed. ——, January 29, 1940; National Labor Relations Board v. Waterman S. S. Corp., 60 S.Ct. 493, 84 L.Ed. ——, February 12, 1940. Indeed, I had supposed that the issue had been completely settled not only by our own decisions[1] and the now almost unanimous rulings of the other circuit courts of

---

[1] National Labor Relations Board v. American Mfg. Co., 2 Cir., 106 F.2d 61; National Labor Relations Board v. National Licorice Co., 2 Cir., 104 F.2d 655, certiorari granted 60 S.Ct. 108, 84 L.Ed. ——; National Labor Relations Board v. Hopwood Retinning Co., 2 Cir., 98 F.2d 97; Id., 2 Cir., 104 F.2d 302; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 217, 231, 59 S.Ct. 206, 83 L.Ed. 126; Id., 2 Cir., 95 F.2d 390; National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 94 F.2d 862, 874, 875, certiorari denied 304 U.S. 576, 585, 590, 58 S.Ct. 1046, 82 L.Ed. 1540.

appeals,[2] but also by the express holding of the Supreme Court in National Labor Relations Board v. Falk Corp., 60 S.Ct. 307, 312, 84 L.Ed. ——, January 2, 1940, restoring a similar cease and desist order of the Board which had been modified in the court below.[3] The Supreme Court said: "Knowledge on the part of the men that the company would cease and desist from hampering, interfering with and coercing them in selection of a bargaining agent, which the Board found the company had done successfully in the past, was essential if the employees were to feel free to exercise their rights without incurring the company's disfavor." And it went on to point out that the notices under the modifying order not only failed to assure the men that the company would cease its unlawful and coercive practices, but in effect told them that the Independent Union, while disestablished for the time being, was still available for selection by the employees; and thus the modified notices "neither re-

nounced the company's unlawful practices nor promised their abandonment." This reasoning is particularly pertinent here. For the employer freely concedes and actually stipulates the salient fact that at least by the time of the hearing the Union represented a majority of the production and maintenance workers in its Jamestown plant, and yet it has claimed continuously, even to this court, that it has not refused to bargain collectively with the Union.

If I could see in the Board's order a striking down of dearly bought privileges sanctified by history, I should hasten to join in the repudiation of such an act. But I am not able so to see it. Rather does this appear to me as but a case where an employer, found by due process to have been violating the law of the land as to its employees, is directed to give proper assurances to those employees that it will change its ways.[4] And our modification here seems to me but permission to it to attempt to re-

---

[2] National Labor Relations Board v. H. E. Fletcher Co., 1 Cir., 108 F.2d 459; National Labor Relations Board v. Stackpole Carbon Co., 3 Cir., 105 F.2d 167; National Labor Relations Board v. Griswold Mfg. Co., 3 Cir., 106 F.2d 713, 724; National Labor Relations Board v. Asheville Hosiery Co., 4 Cir., 108 F.2d 288; National Labor Relations Board v. Brown Paper Mill Co., Inc., 5 Cir., 108 F.2d 867; National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179; National Labor Relations Board v. Boss Mfg. Co., 7 Cir., 107 F.2d 574, 579; and cf. also note 3, below; Cudahy Packing Co. v. National Labor Relations Board, 8 Cir., 102 F.2d 745, certiorari denied 60 S.Ct. 78, 84 L.Ed. ——; National Labor Relations Board v. National Motor Bearing Co., 9 Cir., 105 F.2d 652; contra, Swift & Co. v. National Labor Relations Board, 10 Cir., 106 F.2d 87, 94. Compare also the many cases where the order is entered without objection, as in the ten cases in 102 F.2d 998–1007.

Possibly, as is suggested, the cited decisions from the Fourth and Sixth Circuits do not overrule the earlier decisions cited in the opinion. But it cannot be without significance that these courts have now enforced these orders without question. Moreover, the Fourth Circuit had already departed from its earlier position to the extent of requiring the employer to post a copy of the Board's order, together with notices that the order had been approved by the court and

was binding on the employer and that "the employer will abide by and comply with it." National Labor Relations Board v. Eagle Mfg. Co., 4 Cir., 99 F.2d 930, 932; Virginia Ferry Corp. v. National Labor Relations Board, 4 Cir., 101 F.2d 103, 106.

[3] The original order below appears in 7 Cir., 102 F.2d 383, the modifying order in 106 F.2d 454. The point had been raised before the Supreme Court and the Board's order affirmed without discussion in National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 301 U.S. 58, 70, 772, 57 S.Ct. 645, 630, 81 L. Ed. 921; see, also, National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 22, 49, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 263, 264, 268, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; and Consolidated Edison Co. v. National Labor Relations Board, note 1, above.

[4] Since words are but counters to convey thought, some other form of expression might perhaps be devised to express this idea to the workmen, but no other statement both direct and precise has yet been suggested. Even that safeguard required by the Fourth Circuit in cases such as National Labor Relations Board v. Eagle Mfg. Co., note 2, above, that there be posted the full order approved by the court and the employer's agree-

furbish a dignity already tarnished by its persistent refusal to reach that state of accord with its duly organized workmen which the law contemplates.

I think enforcement of all of the Board's order should be directed.

ment to comply with it, is omitted from our modification herein. Perhaps some such formula as that the employer "will cease and desist from those activities found by the Board to be unfair labor practices" might suffice.