## HARTSELL MILLS CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 4592.

Circuit Court of Appeals, Fourth Circuit.
April 10, 1940.

Edwin A. Lucas, of Philadelphia, Pa. (Benjamin W. Parham and Parham & Taylor, all of Oxford, N. C., and Drinker, Biddle & Reath, of Philadelphia, Pa., on the brief), for petitioner.

Bertram Edises, Atty., National Labor Relations Board, of Washington, D. C., (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Roman Beck, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is a petition to review an order of the National Labor Relations Board. Petitioner operates a textile mill at Concord, N. C. The Board found that it refused to bargain collectively with a labor union representing its employees, that it interfered with self organization on the part of the employees, and that it was guilty of anti-union discrimination in the discharge of one Love. A cease and desist order in the usual form was entered, and petitioner was directed to reinstate Love with back pay. In the view which we take of the case, three questions are presented for our consideration: (1) Whether the finding of the

Board that the union represented a majority of petitioner's employees is supported by substantial evidence; (2) whether the finding that petitioner refused to bargain with the union is so supported; and (3) whether the finding as to the discriminatory discharge of Love is so supported. We think that all of these questions must be answered in the affirmative.

■ Petitioner had 200 employees at the time of the refusal to bargain. Union membership cards signed by 137 of these were introduced in evidence. There were discrepancies between the names on some of the cards and those on petitioner's pay roll; but the discrepancies were of minor character and there was sufficient evidence of identity to justify the Board's finding. Petitioner makes much of the fact that on the membership cards the employees were described as employed by Stead & Miller Company, petitioner's principal stockholder; but this, we think, is immaterial. The cards specifically designated the union to act as bargaining representative in all matters relating to wages and conditions of employment; and, in its negotiations with the union, petitioner never at any time raised the point that it was not properly authorized to represent its members in bargaining with petitioner. Futhermore, petitioner did not raise the point that the union did not represent a majority of the employees or refuse to bargain with it on that ground. The contention, belatedly made, that the union had not secured majority representation at the time of the refusal to bargain is too unsubstantial to justify serious discussion. The point that the union may not now represent a majority of petitioner's employees is sufficiently answered by what was said by this Court in the recent case of National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632.

■ Unsubstantial, too, is the contention that the finding as to refusal to bargain collectively is not adequately supported. There was evidence that petitioner took the position in dealing with the union that it would recognize the right of the union to represent only employees who were members of that organization, and no others. This was not a compliance with the act, section 9(a) of which provides that an organization representing a majority shall bargain for all of the employees. 29 U.S.C.A. § 159(a). National Licorice Co. v. National Labor Relations Board, 60 S.Ct. 569, 574, 84 L.Ed. ——; National Labor Relations Board v. Biles-Coleman Co., 9 Cir., 98 F.2d 18, 22; National Labor Relations Board v. Boss Mfg. Co., 7 Cir., 107 F.2d 574, 577. There was evidence, also, that petitioner took the position that it would not embody in a written contract any agreements which might be reached with the union. This was a pertinent circumstance for consideration on the issue of refusal to bargain as required by the act, even though no agreements were actually reached. National Labor Relations Board v. Highland Park Mfg. Co., supra. Furthermore, there was evidence that petitioner made a withdrawal of charges as to the discriminatory discharge of Love a condition precedent to further negotiations; and it is clear that petitioner could not thus make its compliance with the act dependent upon dismissal of charges that it had been guilty of violating it.

We have recently held in National Labor Relations Board v. Highland Park Mfg. Co., supra, that a refusal to bargain collectively with representatives of employees amounts to an interference with their right of self organization for the purpose of collective bargaining. See also Art Metals Const. Co. v. National Labor Relations Board, 2 Cir., 110 F.2d 148; National Labor Relations Board v. Biles-Coleman Co., 9 Cir., 98 F.2d 18, 22, 23. It was proper, therefore, upon a finding of refusal to bargain collectively, for the order to forbid generally any interference with the right of self organization. As that provision of the order was thus supported in the findings, it is unnecessary to consider the finding as to interference, restraint and coercion by supervisory employees.

■ As to the discharge of Love, there was evidence on behalf of petitioner that Love had been guilty of various acts of misconduct extending over a period of more than a year. He was not discharged for any of these acts, however, but, according to the contention of petitioner, because of criticising the company for the discharge of an aged gatekeeper. The Board found that the real reason was that he had just been elected president of the local chapter of a labor union, in the organization of which he had been very active, and to which petitioner was much opposed. In view of the fact that petitioner retained Love in its service notwithstanding the circumstances which it now urges as justification for his discharge, that it gave as reason for the discharge a comparatively trivial criticism of its policy and that it discharged him so soon

after his election as head of the local chapter of the union, which it was anxious to be rid of, we cannot say that the finding of the Board is not substantially supported by the evidence. It must be remembered, in this connection, that the question involved is a pure question of fact; that, in passing upon it, the Board may give consideration to circumstantial evidence as well as to that which is direct; that direct evidence of a purpose to violate the statute is rarely obtainable; and that where the finding of the Board is supported by circumstances from which the conclusion of discriminatory discharge may legitimately be drawn, it is binding upon the courts, as they are without power to find facts or to substitute their judgment for that of the Board. Petitioner contends that Love is not entitled to reinstatement because he has obtained substantially equivalent employment elsewhere; but the finding of the Board to the contrary is sustained by the evidence in the light of our recent holding in Mooresville Cotton Mills v. National Labor Relations Board, 4 Cir., 110 F.2d 179.

█ We note that in paragraph 2(e) of the Board's order petitioner is required to post notices containing the "cease and desist" promise disapproved by this Court in National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951, 958, 959; National Labor Relations Board v. Eagle Mfg. Co., 4 Cir., 99 F.2d 930, 932; Virginia Ferry Co. v. National Labor Relations Board, 4 Cir., 101 F.2d 103, 106; and National Labor Relations Board v. Nebel Knitting Co., 4 Cir., 103 F.2d 594. In accord with these decisions are those of three other Circuits. National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678, 681; Swift & Co. v. National Labor Relations Board, 10 Cir., 106 F.2d 87, 94; Art Metals Const. Co. v. National Labor Relations Board, 2 Cir., 110 F.2d 148, 151. As pointed out by Judge Learned Hand in the case last cited, the Supreme Court has not indicated a contrary view; and we cannot believe that it was the intention of Congress to countenance an administrative order the effect of which is to require from one who denies that he has violated the law a confession that he has violated it. Such a notice as has been approved by this Court accomplishes the same result as the one ordered by the Board and avoids the unnecessary humiliation involved in an order which in effect requires the employer to confess publicly a violation of the law which

he denies, and has the right to deny, even though he may have been found guilty of the violation. The Board is given no power to punish; and to exact from an employer a confession that he has violated the law is not only to punish him, but is to inflict a humiliating punishment out of harmony with the spirit of our law. As was well said by Judge Hand in the Art Metals Const. Co. case, supra: "The employer must indeed post a notice that he will conform to the Board's order; that is no longer open to dispute, and, so far as we know, no court has ever held the contrary. He must declare that he will 'not refuse to bargain collectively,' etc. in the words of Article I (a); and that he will not 'in any other manner interfere with,' etc., in words of Article I(b). But we think that to compel him to say that he will 'cease and desist', necessarily imports that in the past he has been doing the things forbidden; indeed we find it hard to see how the contrary can be rationally argued. Forcibly to compel anyone to declare that the utterances of any official, whoever he may be, are true, when he protests that he does not believe them, has implications which we should hesitate to believe Congress could ever have intended. At any rate, until the Supreme Court speaks, we will not so construe the statute; nor are we disposed nicely to examine the scruples alleged; too long a history, and too dearly bought privileges, are behind such refusals. Moreover, we do not see what the words add to the effect of the notice, which must in any event be of complete compliance with the order. We cannot suppose that the Board has any interest in the precise rubric adopted; but we can very well understand the sense of outrage which anyone may feel at being forced publicly to declare that he has committed even a minor dereliction of which in his heart he does not believe himself guilty."

The Board has no power to punish for contempt. We have; and the possession of the power should make us careful not to order anyone to do what we are not ready to punish him for not doing. We cannot imagine a court sending an employer to jail for not publishing a confession that he has been guilty of violating the law, for not even a convicted felon can be required to confess his guilt. The employer may properly be ordered to publish the order and findings of the Board together with a promise that he will abide by it and will abstain from interference with the right of self

organization, discriminatory conduct and other anti-union activity; but we see no reason to require him to couch the promise in language which amounts to a confession that he has violated the law, as a promise to "cease and desist" from such violation undoubtedly is.

The petition to set aside the order of the Board will be denied; but paragraph 2(e) of the order will be modified so as to require petitioner to post notices containing a copy of the order of the Board, together with a statement that the order has been approved by this Court, that petitioner will abide by and comply with it and that petitioner's employees are free to become or remain members of Textile Workers Organizing Committee. As so modified, the order of the Board will be enforced.

Petition denied; order modified and enforced.