216 F.2d 161
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, HOISTING AND
PORTABLE LOCAL NO. 101 OF GREATER KANSAS CITY AND
VICINITY, A.F. OF L., Respondent.
 No. 15064.
 United States Court of Appeals Eighth Circuit.
 Nov. 3, 1954.
 
 Margaret M. Farmer, Atty., National Labor Relations Board, Washington, D.C. (George J. Bott, Gen. Counsel, David P. Findling Asst. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Fannie M. Boyls, Atty., National Labor Relations Board, Washington, D.C., were with her on the brief), for petitioner.
 John J. Manning, Kansas City, Mo., for respondent.
 Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.
 GARDNER, Chief Judge.
 
 
 1
 This is a petition by the National Labor Relations Board to enforce a cease and desist order entered by it against Sub Grade Engineering Company and International Union of Operating Engineers, Hoisting and Portable Local No. 101 of Greater Kansas City, A.F. of L., based on findings of violations of certain provisions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.
 
 
 2
 The Sub Grade Engineering Company is a contracting and engineering corporation engaged in building construction, 'unwatering', and engineering. In May, 1949, it was employed as a subcontractor on the Hawthorne project which involved the erection of a hydroelectric plant near Kansas City, Missouri. Its contract provided that it employe 'the proper labor.' Labor in this area was almost entirely unionized and while it was not bound by contract to employ only union labor, it nevertheless called the representative of the union, inquired as to the union's rules and wage scales and indicated its intention, without the formality of negotiating a contract, of hiring through the union and of conforming to the union's rules.
 
 
 3
 In 1934, Local 101 chartered two subordinate locals of which Local 101-- A admitted to membership apprentices and Local 101-- B formed for organizational purposes, admitted to membership operators of caterpillar tractors, bulldozers, and other types of earth-moving machinery. Both subordinate locals were managed by the officers of Local 101, who presided over their meetings. Members of these subordinate locals were not admitted to meetings of Local 101 and had no vote either in the election of officers or in any decision to strike. Shortly after Locals 101-- A and 101-- B were chartered, Local 101 passed a trade rule which provided that in a permanent layoff the members of Locals 101-- A and 101-- B should be laid off before members of Local 101, regardless of seniority on the job.
 
 
 4
 Soon after operations began in June, 1949, Sub Grade Engineering Company's general manager requested that the union send him a crew of pumpers. In response to this request the union sent a crew who were members of Local 101. In response to a later request he was sent a crew of Local 101-- B men consisting of three men named respectively Collins, Stewart and Swant. Subsequent to the hiring of the Local 101-- B men, on request of the company the union sent a crew of Local 101 men.
 
 
 5
 When it became apparent that certain operations of the company were about completed, the union steward, sensing certain layoffs of laborers would necessarily follow, advised Sub Grade's general manager that according to the union rules the crew consisting of Collins, Stewart and Swant were to be laid off first because of the union seniority rule. It was the established usage and practice of the company to observe the rule of seniority in laying off its employees and the general manager then took the matter up with the union representative advising him of its practice and protesting that Collins, Stewart and Swant had three months' seniority over the last crew hired. The union representative told him that Collins, Stewart and Swant were members of Local 101-- B and not of Local 101, and that according to the union rule they must be laid off before any members of Local 101, despite their seniority on the job. The general manager then asked the union's representative if in the circumstances the rule could not be waived so that these three men need not be laid off in violation of their seniority rights as recognized by the company. The union's representative reported that the rule had been adopted by the membership and that he had no authority to waive it. Because of the insistent demand of the union the company's general manager laid off these three men in disregard of its custom and usage. These men were all experienced men, skilled in the work which they were performing for the company and their work had been entirely satisfactory. Prior to their layoff both Collins and Stewart had sought to be transferred from Local 101-- B to Local 101 but they received no satisfactory answer to their applications and they had not been acted upon at the time of their layoff. No question has been raised on the record as to the eligibility of either Collins or Stewart to transfer to Local 101. Collins had been a member of Local 101-- B for approximately ten years, Stewart had been a member for over eight years, and they had both entered Local 101-- b, as experienced operators and could handle a variety of machines.
 
 
 6
 Subsequent to the time Collins and Stewart were laid off they learned that the general manager of the company had desired to observe its seniority rule and lay off other workers who had been employed subsequent to the time they had been employed but that the union had refused to waive its rule giving absolute priority in job retention to members of Local 101. They then filed the charges which initiated and formed the basis for the proceeding culminating in the order to cease and desist, the enforcement of which is now sought by the Board. Based on these charges the General Counsel issued his complaint alleging that the company had violated Section 8(a)(3) of the act by discriminating in regard to the hire or tenure or term of employment of its employees Collins and Stewart, thereby encouraging membership in the respondent union and that the union had violated Section 8(b)(2) of the act by attempting to cause and by causing the company to discriminate against its employees Stewart and Collins because of their nonmembership in respondent union. A hearing was had before an examiner at which both the union and the company were represented by separate counsel. The examiner found that the allegations of the complaint were sustained as to the charges against each of the respondents and recommended a form of cease and desist order. The Board, basing its decision upon the whole record, adopted the proposed findings and order of the examiner and embodied these recommendations in a formal cease and desist order. It found in substance that the company by discriminatorily discharging Collins and Stewart upon the demand of the union under the circumstances here present, violated Section 8(a)(3) and (1) of the act and that the union, by causing and attempting to cause the discharges violated Section 8(b)(2) and Section 8(b)(1)(A) of the act. The Board's order required the company and the union to cease and desist from the unfair labor practices found to have been committed by each and from in any like or related manner interfering with, restraining or coercing the company employees in the exercise of the rights guaranteed them by Section 7 of the act. Affirmatively the order required the company and the union jointly and severally to make whole Collins and Stewart for the discrimination practiced against them and to post appropriate notices and to notify the Regional Director of steps taken to comply with the Board's order.
 
 
 7
 Following the entry of the Board's cease and desist order the company paid one-half of the sum necessary to make Collins and Stewart whole for the discrimination against them and otherwise complied with the terms of the order and has acknowledged its liability for the balance due Collins and Stewart under the terms of the order in the event the union, following an enforcement decree against it, should fail to pay these employees the remainder due them. As to the company the proceeding in this court is moot and the Board does not seek an enforcement of its order as against it.
 
 
 8
 In resisting the Board's petition for the enforcement of its cease and desist order, respondent contends that it had no contract relations with the company, that it made no threats nor demands with reference to the employment or discharge of the workmen but that it only advised the company as to the existence of its seniority rule and complied with the company's requests for furnishing it workmen. It claims that whatever it said or did with reference to the alleged discriminatory discharge or layoff of Collins, Stewart and Swant was within its rights as defined or limited by Section 8(c) of the act which in effect provides that, 'The expressing of any views, argument, or opinion * * * shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit.' The question which the Board was called upon to determine was whether or not, considering all the facts and circumstances proven, the union caused or attempted to cause the company discriminatorily to discharge Collins, Stewart and Swant. It is clear that under the rules of the company with reference to seniority the men were discriminatorily discharged and we think the Board was warranted in finding that their discharge was brought about by the union. This being a fact it was susceptible of proof by circumstantial evidence and it was the province of the Board as a fact finding agency to determine the facts. As said in Hartsell Mills Co. v. N.L.R.B., 4 Cir., 111 F.2d 291, 293.
 
 
 9
 'It must be remembered, in this connection, that the question involved is a pure question of fact; that, in passing upon it, the Board may give consideration to circumstantial evidence as well as to that which is direct; that direct evidence of a purpose to violate the statute is rarely obtainable; and that where the finding of the Board is supported by circumstances from which the conclusion of discriminatory discharge may legitimately be drawn, it is binding upon the courts, as they are without power to find facts or to substitute their judgment for that of the Board.'
 
 
 10
 The Board in referring to the pertinent surrounding facts and circumstances under which the company discharged these men in violation of its own rule as to seniority said,
 
 
 11
 'In the instant case, the Respondent Union's International and its locals were the source of the Company's labor supply, not only for the job involved here but for other operations in various parts of the country. In view of the Respondent Union's potential economic power to deprive the Employer of its labor market, the request of the Respondent Union's job steward, later reiterated by the business agent, that members of the subordinate local be laid off out of turn, exerted sufficient pressure to accomplish the ends desired by the Respondent Union. It is unrealistic to contend that such request was not in fact that 'cause' of the discharges.'
 
 
 12
 These discharged men were members of subordinate Local 101-- B and so far as appears from the record they were fully qualified for membership in Local 101. The officers of Local 101 controlled the affairs of Local 101-- B and it was held by the Supreme Court in Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. N.L.R.B., 347 U.S. 17, 74 S.Ct. 323, reversing the decision of this court in N.L.R.B. v. International Brotherhood of Teamsters, etc., 8 Cir., 196 F.2d 1, that a union may not apply its rules against its own members so as to cause job discrimination by employers. See, also, N.L.R.B. v. Philadelphia Iron Works, Inc., 3 Cir., 211 F.2d 937. The action of the union not only encouraged membership in itself but it encouraged its members to retain their membership. This is the teaching of the Supreme Court in Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. N.L.R.B., supra (347 U.S. 17, 74 S.Ct. 331), where, in quoting with approval from the decision of the Board, it is among other things said:
 
 
 13
 'The normal effect of the discrimination against Fowler was to enforce not only his obedience as a member, of such rules as the Respondent might prescribe, but also the obedience of all his fellow members. It thereby strengthened the Respondent both in its control of its members for their general, mutual advantage, and in its dealings with their employers as their representative. It thus encouraged non-members to join it as a strong organization whose favor and help was to be sought and whose opposition was to be avoided. In its effect upon non-members alone, it must therefore be regarded as encouraging membership in Respondent. * * * Finally, by its demonstration of the Respondent's strength, the discrimination in the present case also had the normal effect of encouraging Fowler and other members to retain their membership in the Respondent either through fear of the consequences of dropping out of membership or through hope of advantage in staying in."
 
 
 14
 In referring to the same contention the court further said:
 
 
 15
 'A fortiori the Second Circuit correctly concluded in Radio Officers that encouragement to remain in good standing in a union is proscribed.'
 
 
 16
 The contention of respondent that its conduct is protected by Section 8(c) of the act can not be accepted. As pointed out in International Brotherhood of Electrical Workers v. N.L.R.B., 341 U.S. 694, 71 S.Ct. 954, 963, 95 L.Ed. 1299:
 
 
 17
 'The remedial function of § 8(c) is to protect noncoercive speech by employer and labor organization alike in furtherance of a lawful object.'
 
 
 18
 The Board having determined from the proven facts and surrounding circumstances that the purpose of the respondent was to cause the company to discriminate against Collins, Stewart and Swant by disregarding their seniority rights and thus causing the company to violate Section 8(a)(3), it can not seek protection under the provisions of Section 8(c).
 
 
 19
 We have considered all the other contentions of respondent and think they are without merit. The petition of the National Labor Relations Board for enforcement of its order will therefore be granted by appropriate decree.