W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**NATIONAL WELDERS SUPPLY COMPANY**, Inc., Defendant.

Civ. No. 1725.

United States District Court W. D. North Carolina, Charlotte Division.

May 20, 1966.

John W. Douglas, Asst. Atty. Gen., William Medford, U. S. Atty., Asheville, N. C., Joseph R. Cruciani, Asst. U. S. Atty., Charlotte, N. C., Harland F. Leathers, Atty., Dept. of Justice, Charles Donahue, Sol., Jacob I. Karro, Acting Assoc. Sol., George T. Avery, Acting Deputy Assoc. Sol., Cornelius S. Donoghue, Jr., Joe Sparks, Attys., and Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, for plaintiff.

Ernest W. Machen, Jr., Charlotte, N. C., for defendant.

CRAVEN, Chief Judge.

Under the Labor-Management Reporting and Disclosure Act of 1959 (Title 29 U.S.C.A. Section 433(a) et seq.), certain employers are required to file with the Secretary of Labor an employers report. National Welders Supply Company, Inc. (hereafter called Welders), the defendant herein, filed such a report, which was rejected by the Secretary as being false and erroneous because, as the Secretary contends, certain questions which should have been answered "yes" were answered "no". This action is brought by the Secretary to compel Welders to file a corrected report, i. e., to answer the questions "yes". Jurisdiction is predicated upon Title 29 U.S.C.A. Section 440.

Welders is a manufacturer of oxygen and various other gases, much of which is shipped in interstate commerce. It is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. In 1958 the International Union of Operating Engineers (Local No. 465, AFL–CIO) began a cam-

paign to organize the company's employees. At about the same time Welders entered into an arrangement with and made expenditures to a labor consultant firm, Lee Associates, Inc., and a closely-related organization, Investigations, Inc. In 1960 a complaint was issued by the National Labor Relations Board charging Welders, Lee Associates, Inc., Investigations, Inc. and others with unfair labor practices in violation of the National Labor Relations Act. In a proceeding before the National Labor Relations Board, Welders was held to have violated Section 8(a) (1) of the Act by:

1. Interrogation of employees concerning union membership.
2. Threats of discharge for engaging in union activity.
3. Requests that any union activity be reported.
4. Instructions to refrain from union membership.

In large part the guilt of Welders was predicated upon the acts and conduct of Lee Associates, Inc. and Investigations, Inc., its agents for purposes of the Act. Welders did not appeal the Board's decision.

Thereafter, Welders was directed to file an employer report with the Secretary on a Labor Department form. On June 12, 1961, Welders filed its report, answered questions D, E, F & G "no",[1] and thereby precipitated this lawsuit.

The questions answered "no" were as follows:

"During the past fiscal year did you make any expenditure where an object thereof, directly or indirectly, was to interfere with, restrain, or coerce employees in the right to organize and bargain collectively through representatives of their own choosing?"

"During the past fiscal year did you make any expenditure where an object thereof, directly or indirectly, was to obtain information concerning the activities of employees or of a labor

organization in connection with a labor dispute in which you were involved?"

"During the past fiscal year did you make any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertook activities to exercise or not to exercise, or as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or did you make any payment (including reimbursed expenses) pursuant to such agreement or arrangement?"

"During the past fiscal year did you make any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertook activities where an object thereof, directly or indirectly, was to furnish you with information concerning activities of employees or of a labor organization in connection with a labor dispute in which you were involved; or did you make any payment pursuant to such an agreement or arrangement?"

The Secretary contends that Lee Associates and Investigations, Inc. were employed by Welders for the unlawful purposes described in the foregoing questions and that the answers to the questions should be "yes". Welders denies that it contracted with the two companies for any purpose other than to seek legitimate advice from the labor consulting firms on wage and hour problems, job analysis and evaluation, personnel relations, including scales of compensation, and representation proceedings before the National Labor Relations Board.

█ It is the Secretary's position that since the National Labor Relations Board has held that Welders was engaged in activities of the kind described in 29 U.S.C.A. Section 433(a) Welders is now collaterally estopped to deny that it performed the acts and, therefore, should be

1. The questions are based upon and closely follow the language of the statute permitting them. 29 U.S.C.A. Section 433 (a).

required to answer the questions "yes". The Secretary seeks an injunction to compel such answers.

The questions relate to the state of mind of the management of Welders. That issue was not squarely presented to the Hearing Examiner in the unfair labor practice proceedings. Performing the forbidden acts, either itself or through Lee Associates, is not the same thing as employing Lee Associates *for the purpose* of accomplishing such forbidden acts. Imputing the conduct of Lee Associates to Welders does not necessarily determine that Welders' *purpose* in employing Lee Associates was unlawful. Contrary to the government's contention, there is no difference between the alternative provisions of Section 433(a) (4) as far as the term "object" is concerned. In the first provision of Section 433(a) (4), the reporting requirement is applicable if an "object", directly or indirectly, is "to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing * *."

It is the government's contention that the second provision of Section 433(a) (4) is satisfied, without reference to the term "object", where there is an agreement or arrangement by which a labor consultant or other contractor "undertakes to supply such employer with information concerning the activities of employees or a labor organization * * * involving such employer * * *."

■ The language "agreement or arrangement (here a retainer) with a labor relations consultant * * * *pursuant to which* such person * * * undertakes to supply such employer with information" means, in my opinion, that an object of the retainer must have been the prohibited acts. (Emphasis mine.)

■ Under the doctrine of respondeat superior, as "liberally" [2] applied in labor relations cases before administrative tribunals, Welders would be clearly responsible for the unlawful labor practices of Lee Associates regardless of its purpose in hiring that company. "In determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized *or* subsequently ratified shall not be controlling." 29 U.S.C.A. Section 152(13); see also Lummus Co. v. N. L. R. B., 339 F.2d 728 (D.C. Cir. 1964); in Colson Corp. v. N. L. R. B., 347 F.2d 128 (8th Cir. 1965), the conduct of independent businessmen was imputed to the employer on the basis of a failure of the employer to sufficiently repudiate it; see also N. L. R. B. v. Taylor-Colquitt Co., 140 F.2d 92 (4th Cir. 1943).

■ Assuming, without deciding, that the doctrine of collateral estoppel may have application to a case such as this one so as to require an affirmative answer to given questions, as to which I have considerable doubt, it is clear that the doctrine of collateral estoppel is not operable on these facts for the reason that the question before the Board was not the same as the question before the court. See: Hellenic Lines, Limited v. The Exmouth, 253 F.2d 473 (2d Cir. 1958), cert. denied 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074; Moore v. United States, 344 F.2d 558 (D.C. Cir. 1965).

I have previously denied the Secretary's motion for summary judgment. Even so, the Secretary has elected to offer no oral testimony and has rested his case upon substantially the same evidence offered on the motion for summary judgment:

(1) Plaintiff's interrogatories 1, 5, 6, 7, 13, 15 and 16 and the defendant's answers thereto, and

(2) Plaintiff's request for admissions and the defendant's responses, which incorporate a copy of the decision and order of the National Labor Relations Board rendered

---

2. In N.L.R.B. v. Arkansas-Louisiana Gas Co., 333 F.2d 790 (8th Cir. 1964), the Eighth Circuit said: "[T]he principles of agency and its establishment are to be construed liberally."

August 2, 1961, in the case of National Welders Supply Company, et al., 132 N.L.R.B. 660, together with the Trial Examiner's intermediate report.

Plainly, the Secretary relies heavily upon the findings of fact and conclusions recited in this Labor Board decision. Although enough to engender strong suspicion as to Welders' motive in employing Lee Associates, it is not enough to carry the issue by the greater weight of the evidence in the face of the oral testimony of denial offered by Welders. Where motive, intent, subjective feelings and reactions, consciousness and conscience are to be searched, examination and cross-examination are helpful instruments in obtaining the truth. Alabama Great Southern R. R. Co. v. Louisville & Nashville R. R. Co., 224 F.2d 1, 50 A.L.R.2d 1302 (5th Cir. 1955); see also Alvado v. General Motors Corp., 229 F.2d 408 (2d Cir. 1955). Demeanor of witnesses does not come through the prior record of an administrative tribunal. Nor was that tribunal primarily concerned, if at all, with the issue of motivation now before me.

Neither counsel nor I have discovered a case quite like this one. But, Hartsell Mills Co. v. N. L. R. B., 111 F.2d 291 (4th Cir. 1940), is strongly persuasive. In that case the Court of Appeals for the Fourth Circuit held that an employer may be ordered to publish the order and findings of the National Labor Relations Board together with a promise that he will abide by it and abstain from interference with the right of self-organization, but that the Board cannot require an employer to couch the promise in language which amounts to a confession that he has violated the law. Judge Parker, speaking for the court, disapproved "an order which in effect requires the employer to confess publicly a violation of the law which he denies, *and has the right to deny*, even though he may have been

found guilty of the violation." Id. at 293. (Emphasis mine.) Judge Parker then said: "We cannot imagine a court sending an employer to jail for not publishing a confession that he has been guilty of violating the law, for not even a convicted felon can be required to confess his guilt." Ibid.

Likewise, in Art Metals Construction Co. v. N. L. R. B., 110 F.2d 148 (2d Cir. 1940), an order similar to the one in *Hartsell* was disapproved by the court, which, speaking through Judge Learned Hand, said: "[W]e can very well understand the sense of outrage which anyone may feel at being forced publicly to declare that he has committed even a minor dereliction of which in his heart he does not believe himself guilty." Id. at 151.

It is the Secretary's prerogative to frame the questions pursuant to the statute. He may not on this record prescribe the answers.[3]

The complaint will be dismissed.

---

3. During the trial counsel for Welders stated that Welders was willing to append to its negative answers that the National Labor Relations Board had found it guilty of unfair labor practices of the type set forth in 29 U.S.C.A. Section 433 (a). The offer was rejected by the government.