**NATIONAL LABOR RELATIONS BOARD v. LOUISVILLE REFINING CO.**

No. 7979.

Circuit Court of Appeals, Sixth Circuit.

March 13, 1939.

A. Shelby Winstead, of Louisville, Ky. (Woodward, Dawson & Hobson and A. Shelby Winstead, all of Louisville, Ky., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This case arises out of a petition of the National Labor Relations Board filed under Title 29, Section 151 et seq., U.S.C., 29 U.S.C.A. § 151 et seq., to enforce its order theretofore issued against the respondent, an oil refining company operating in Louisville, Kentucky. A substantial part of the raw materials and the crude oil used originates outside of Kentucky, and much of the gasoline, kerosene and other finished products is distributed to Ohio, Indiana and Kentucky. The operation is plainly interstate. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 11, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; Clover Fork Coal Co. v. National Labor Relations Board, 6 Cir., 97 F.2d 331; National Labor Relations Board v. Kentucky Fire Brick Co., 6 Cir., 99 F.2d 89.

Upon appropriate complaint which was denied in its material allegations by respondent's answer, the Board found that respondent had engaged in unfair labor practices within the meaning of Section 8 (1) (3) (5) of the act in that the respondent (1) had refused to bargain collectively with the designated representative of the employees, the International Association of Oil Field, Gas Well and Refinery Workers of America,[1] and (2) had discouraged membership in the union and discharged nineteen employees because of their union activity. The Board thereupon ordered respondent to cease and desist from such unfair labor practices, to reinstate the discharged employees with back pay, to bargain collectively with the union, and to post certain notices with reference to the order.

The respondent at the outset asserts that it is the duty of this court to exercise its own independent judgment as to facts found by the Board. With this contention we are not in accord. The statute Title 29, § 160(e) provides that "The findings of the Board as to the facts, if supported by evidence, shall be conclusive,"

Philip G. Phillips, of Cincinnati, Ohio (Charles Fahy and Robert B. Watts, both of Washington, D. C., Philip G. Phillips, of Cincinnati, Ohio, Laurence A. Knapp, of Washington, D. C., and Allen Heald, of Chicago, Ill., on the brief), for petitioner.

[1] Hereinafter called the union.

and under the plain terms of this provision the question presented is whether there is substantial evidence to support the findings of the Board. In certain cases (Bluefield Water Works & Imp. Co. v. Public Service Commission, 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176; State Corp. Commission v. Wichita Gas Co., 290 U.S. 561, 54 S. Ct. 321, 78 L.Ed. 500, Cf. Crowell v. Benson, 285 U.S. 22, 46, 52 S.Ct. 285, 76 L.Ed. 598), the Supreme Court has indicated that parties attacking orders of rate-making bodies are entitled to the independent judgment of the courts both as to law and facts. This, however, is due to the legislative character of a determination of a schedule of future rates. Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 289, 40 S.Ct. 527, 64 L.Ed. 908; St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 51, 52, 56 S. Ct. 720, 80 L.Ed. 1033. Respondent asserts that it is deprived of property without due process, in violation of the Fifth Amendment to the Constitution of the United States, U.S.C.A., when it is ordered to pay back wages. No decision of the Supreme Court is cited to the effect that by a mere allegation of confiscation, the administrative findings of the Board with reference to reinstatement of discharged employees with back wages are converted into a legislative determination such as that made by rate-making bodies. Moreover, similar determinations of reinstatement with back pay have been upheld. As stated in National Labor Relations Board v. Jones and Laughlin Steel Corp., supra, page 48, 57 S. Ct. page 629, "Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." Cf. National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 348, 58 S.Ct. 904, 82 L. Ed. 1381; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, supra, page 469, 58 S.Ct. 656. We proceed, therefore, to inquire whether there is substantial evidence to support the findings.

■ Substantial evidence is more than a mere scintilla. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. National Labor Relations Board, 59 S.Ct. 206, 217, 83 L.Ed. ——, decided December 5, 1938; National Labor Relations Board v. Thompson Products, Inc., 6 Cir., 97 F.2d 13, 15.

The respondent urges that there is no evidence supporting the Board's findings because there is no proof (1) that the union was designated bargaining agent by a majority of the employees, or (2) that respondent knew of such designation.

■ The record is clear upon the point that the union was actually so designated. This is shown by the testimony of Lockard and by the fact that signed applications for membership in the union were executed by a majority of the employees. Upon the point as to whether the respondent knew that the union had been so designated we must also rule against the respondent. At the first interview between Brown, the respondent's president, and the representatives of the men, a committee of the local organization visited Brown in company with Stickel, the union agent. Lockard, secretary-treasurer of the local union, stated that the men introduced Stickel to Brown as their representative from the International Association. Brown testified that "Mr. Stickel was at the head of the committee. * * * When they came in and introduced themselves, and I had found out that it was a committee from the union with Mr. Stickel as the organizer, I called in Mr. Waples and Mr. Loudermill." Brown was presented a proposed contract which stated that the agreement was between the company and the union. To hold, as urged by the respondent, that Brown did not know that the union was the bargaining agent of the local group is to ignore the proposed contract and the presence of the local union members sponsoring Stickel, and Brown's own testimony. At no time did Brown raise the point that he did not know that the union had been designated as bargaining agent, and his subsequent efforts to eliminate the union leaders indicate that he knew of its strength in his company. The further contention that the men, when they joined the union, did not designate the union to bargain over wages and hours, asks the court to ignore the generally known fact that men join a union for the precise purpose of collective bargaining over wages, hours, and working conditions.

■ While Brown had various conferences with the men, he at no time recognized the union as their designated bargaining agent, and at all times refused to do so. The respondent's answer admits this refusal. Brown stated that he would not sign a contract with the national organization,

but that he would assent to the formation of a local union. However, the men had designated this union as their agent, and the statute guarantees to the employees the right to a union of their own choosing. Title 29, Section 157, U.S.C., 29 U.S.C.A. § 157. Brown's indication that he would deal with a union which was not the union of the men's choice is no answer to his refusal to deal with the union which they chose. After some negotiations, Brown put into effect a shift from a six-hour day to an eight-hour day. He stated that this shift would necessitate certain lay-offs, and proceeded to deal directly with the individual men and to discharge the principal officers, the principal members of the executive committee, and the leading charter members of the union. Of the nineteen employees discharged, not one was a non-union man. The arbitrary character of the discharges is instanced by the fact that in the oil-cracking division, which had fourteen men in the operating department, ten men, all "good workmen," as the foreman testified, were discharged. At the time of the hearing the department was being operated on an eight-hour day basis with only seven men, and the foreman stated that he "could get along better if he had more men." Of the total number of employees discharged, ten testified as to individual conversations with Brown in which he disapproved of their union connections. No complaint at any time was made of the quality of work of the men laid off. The evidence is convincing that these men were discharged for their union activities. This was a violation of Title 29, Section 158, U. S.C., 29 U.S.C.A. § 158.

The paragraphs of the order requiring respondent to cease and desist from its unfair labor practices and to reinstate the discharged men with back pay are legal and valid.

■ During the proceedings a paper purporting to be signed by fifty-three employees of respondent, executed July 16, 1937, some five months after the discharges, was filed with the Board asking for a discontinuance of the proceedings. The men who signed the paper did not appear nor testify as to the facts set forth in the so-called intervening petition. No evidence appears as to the circumstances under which the paper was secured. The facts which it sets forth, if true, are subsequent to and in no way affect the acts complained of nor the legal conclusion therefrom.

"* * * an order of the character made by the Board, lawful when made, does not become moot * * * because changing circumstances indicate that the need for it may be less than when made." National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 271, 58 S.Ct. 571, 576, 82 L.Ed. 831, 115 A.L.R. 307.

■ In one particular the order must be modified. If the Board is able to compel an employer to state that it will cease and desist from the prohibited actions, the Board compels the employer to admit an infraction of the law, and this is a power not given to the Board by the statute. National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951, 958. Instead of posting notices that it will cease and desist from the actions prohibited, the respondent will be required to post conspicuously notices embodying a copy of the order of the Board, together with a statement that this court has approved the order.

The motion of respondent to dismiss is overruled. A decree will be entered for the enforcement of the order as above modified.