OUGHTON et al. v. NATIONAL LABOR
RELATIONS BOARD.

No. 7336.

Circuit Court of Appeals, Third Circuit.

Nov. 19, 1940.

On Rehearing Feb. 26, 1941.

GOODRICH and MARIS, Circuit Judges, dissenting in part.

Charles A. Wolfe and Montgomery & McCracken, all of Philadelphia, Pa., for petitioners.

Frank E. Hahn, Jr., John F. E. Hippel, and Edmonds, Obermayer & Rebmann, all of Philadelphia, Pa., for intervening petitioners.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, Mortimer B. Wolf, William F. Guffey, Jr., and Ernest Gross, all of Washington, D. C., for National Labor Relations Board.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case comes before the court upon a petition to review and set aside an order [1] of the National Labor Relations Board issued against the petitioners. In its answer to the petition the Board has requested enforcement of its order.

The Conflict in Testimony.

█ The first point made by the petitioners is that they did not, in fact, interfere with or restrain or coerce their employees in the exercise of rights guaranteed to the employees by Section 7 of the National Labor Relations Act. The petitioners complain that the trial examiner believed some witnesses and disbelieved other witnesses and that the witnesses disbelieved were those presented by the petitioners. This is clearly a situation where the determination of the Board on the facts controls. It is not the function of the court to determine from the confusion of conflicting testimony where the truth lies. Republic Steel Corp. v. National Labor Relations Board, 3 Cir., 1939, 107 F.2d 472.

The Finding of Unfair Practices.

██ The determination of credibility of witnesses being a Board function, is there sufficient evidence upon the record to justify the Board's finding that the petitioners' employees were restrained in the exercise of rights guaranteed to them by Section 7 of the Act? Whether the conclusion is to be drawn or not is not for us to say. It is sufficient that there is evidence, which, if believed, supports the conclusion of the Board.

█ There is evidence upon the record in support of the Board's findings that, when the union attempted in May, 1937, to organize the production employees in the plant, Bertram Oughton, one of the partners, addressed the workers and stated that he would never sign a contract with the union and that he would close the plant before he would do so; that several

---

[1] The order reads as follows:

"Upon the basis of the above findings of fact and conclusions of law, and pursuant to Section 10 (c) of the National Labor Relations Act, [29 U.S.C.A. § 160 (c)], the National Labor Relations Board hereby orders that the respondents, John J. Oughton, Charles T. Oughton, Bertram E., Oughton, and Robert B. Oughton, individuals and as co-partners trading as Windsor Manufacturing Company, their agents, successors, and assigns shall:

"1. Cease and desist from:

"(a) Refusing to bargain collectively with Textile Workers Union of America, C. I. O., as the exclusive representative of their employees engaged in production at their Philadelphia plant, exclusive of executives, supervisors, and clerical help;

"(b) In any other manner interfering with, restraining, or coercing their employees in the exercise of their rights to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, or to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection as guaranteed in Section 7 of the National Labor Relations Act, [29 U.S.C.A. § 157].

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Upon request bargain collectively with Textile Workers Union of America, C. I. O., as the exclusive representative of their employees engaged in production at their Philadelphia plant, exclusive of executives, supervisors, and clerical help, in respect to rates of pay, wages, hours of employment, and other conditions of employment, and, if an understanding is reached on any such matter, embody said understanding in a written, signed contract;·

"(b) Post immediately in conspicuous places in and about their plant notices to their employees, and maintain said notices for a period of at least sixty (60) consecutive days from the date of posting, stating that the respondents will cease and desist in the manner set forth in paragraphs 1 (a) and (b) and that they will take the affirmative action set forth in paragraph 2 (a) of this Order;

"(c) Notify the Regional Director for the Fourth Region in writing within ten (10) days from the date of this Order what steps the respondents have taken to comply herewith."

foremen of the company continually disparaged the union saying that it was composed of "a bunch of communists and reds" and that those who joined the union were "mixed up with the wrong people"; that the foremen attempted to dissuade the workers from joining the union and threatened that if they did so the plant would shut down; that after John Oughton, one of the partners had opened a plant in Athens, Ga., to which twenty-four looms were sent from the Philadelphia plant, threats were made by the foremen that the entire plant would move south if the union did not cease its activities; and that there was an abortive attempt to form a company-dominated union. These actions on the part of the company constituted an interference with the rights of its employees to bargain collectively and to choose freely their representative for that purpose.

Our attention is called to evidence offered by the petitioners that the foremen were expressly ordered not to engage in anti-union activities. Petitioners contend that they are not bound by the action of the foremen, citing Cupples Co. Manufacturers v. National Labor Relations Board, 8 Cir., 1939, 106 F.2d 100 and National Labor Relations Board v. Swank Products, Inc., 3 Cir., 1939, 108 F.2d 872. But the supervisory employees in the instant case had definite indicia of authority. It is shown in the evidence that foremen had the power to hire and "lay off". It is inevitable that, under the circumstances, their remarks would carry to rank and file employees the impression that they were speaking for the management. Upon this point the language of the court in H. J. Heinz Co. v. National Labor Relations Board, 6 Cir., 1940, 110 F.2d 843, 847, is relevant: "Petitioner also contends that, even if its supervisory employees did engage in the aforesaid activities, there is no evidence that it expressly authorized or ratified those acts; on the contrary, when they were brought to its attention, it claims that all foremen were instructed to remain neutral and not discriminate against any employee because of union activities. But there was no evidence that petitioner directed any supervisory employee to communicate its alleged neutrality to the employees. If petitioner had really wanted its employees to know that they might with safety join whichever union they desired, the bulletin boards were the obvious and, because direct, the most effective means of assuring them of its impartiality. There was abundant evidence that the ordinary employees feared the disfavor of those from whom they were accustomed to taking orders. Since they were justified in believing that these supervisory employees were acting as petitioner's representatives, petitioner is responsible for what they did."

Bargaining Agency and Intervention Petition.

The next point made by petitioners is that they have not and do not refuse to bargain collectively with the representatives of the majority of their employees. Closely related to this question is the issue raised by the intervenors.

The Textile Workers Union of America, C. I. O., had been designated as bargaining agency of the employees under an election held January 19, 1938. The vote at that time was as follows: out of 221 ballots cast 123 voted in favor of this union, 85 against it; 6 were held void and 7 challenged ballots were not counted. This election was held under the aegis of the Mayor's Labor Board of the City of Philadelphia by agreement of the parties after a long drawn-out strike. During the year intervening between the election conducted by the Mayor's Labor Board and the issuance of the complaint herein the management met many times with the union representatives. We deem it unnecessary to discuss the question whether there is support in the record for the Board's finding that the company had failed to bargain in good faith. On February 13, 1939, the company wrote to the union, refusing to meet with it in the future on the ground that the union no longer represented the majority of its employees. The order of the Board requires the company to bargain with the union upon request. If the union does represent the majority, this is an obligation placed upon the employer by the act; if the union does not have that strength then there is no duty to bargain with it. The issue, therefore, with respect to sections 1(a) and 2(a) of the order is whether there is sufficient evidence to sustain the finding by the Board that the union does represent the majority.

At the hearing held by the trial examiner the intervening petitioners herein filed a petition praying for leave to intervene in the proceedings. This petition alleged that the committee named represented approximately 75 per cent of the employees of

the Windsor Manufacturing Company and bore attached to it what purported to be the signatures of about 145 of the employees.[2] The verification of this petition bears the date of March 9, 1939, which was the date of the opening of the hearing before the trial examiner. The trial examiner declined leave to intervene and this action was affirmed by the Board. The committee, however, was allowed to intervene before this court when the matter was brought here for review. It argues only the question of the propriety of the denial of the right to participate in the proceedings.

■ The complaint in this case was issued February 28, 1939. The hearing was opened on March 9, 1939. This, it will be noted, was something more than a year after the election referred to. At the hearing before the trial examiner the manager of the Philadelphia Textile Workers joint board testified, on direct examination, that he thought his union no longer represented a majority of the workers and that he got this opinion from the records of the union. On cross-examination he testified that he believed the union had a majority on the date of the filing of the complaint by the Board, which was nine days prior to the hearing. He was also allowed to testify, over objection, that he had been told by two employees that the attitude of the management was discouraging membership in the union. This last statement was, obviously, hearsay. While the Board is not bound by technical rules concerning the admission of evidence, unsubstantiated hearsay is not competent evidence of a fact. Consolidated Edison Company v. National Labor Relations Board, 1938, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. This is all the evidence that was presented concerning the union's then representation of a majority of the employees. The verified petition of the intervenors, alleging that they represented 75 per cent of the employees, the Board refused to consider, although if the statement was true, obviously, the union did not represent a majority of the workers of the Windsor Manufacturing Company. In refusing to consider this intervening petition there was an abuse of discretion by the Board.

■ The Board stated and here argues that, "the only evidence in the record indicates that the union's majority status continued to the date of the complaint herein, and, except for the effect of the respondents' unfair labor practices thereafter. As we have previously held, the unfair labor practices of the respondents cannot operate to change the bargaining representatives previously selected by the untrammeled will of the majority."[3] With the general proposition that an employer cannot attack the status of a union whose majority has been dissipated by his own unfair labor practices we, of course, agree. National Labor Relations Board v. Bradford Dyeing Ass'n, 1940, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226. Furthermore, it could well, as one of the courts has said, make a merry-go-round of the act, if after a hearing before an examiner is completed, the matter were referred

---

[2] The designation is in the following form:

"We, the undersigned, all of whom are employees of the Windsor Manufacturing Company, Philadelphia, Pennsylvania, hereby designate and appoint

"Thomas Gibbs
"Catherine V. Kilmartin
"Vincent Bolinski
"John Weber
"Mary Hassan

as our representatives to appear before the National Labor Relations Board to represent us in the matter of the complaint filed by the Textile Workers Organizing Committee against the Windsor Manufacturing Company, hereby ratifying and confirming all actions of the said Committee taken on our behalf."

[3] Citing: National Labor Relations Board v. Bradford Dyeing Ass'n, 1940, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 1940, 111 F.2d 681; National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 1938, 94 F.2d 862; National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 1940, 110 F.2d 632; Hartsell Mills Co. v. National Labor Relations Board, 4 Cir., 1940, 111 F.2d 291; National Labor Relations Board v. Brown Paper Mill Co., 5 Cir., 1940, 108 F.2d 867; National Labor Relations Board v. Louisville Refining Co., 6 Cir., 1939, 102 F.2d 678; M. H. Ritzwoller Co. v. National Labor Relations Board, 7 Cir., 1940, 114 F.2d 432; Bussmann Mfg. Co. v. National Labor Relations Board, 8 Cir., 1940, 111 F.2d 783; National Labor Relations Board v. Biles-Coleman Lumber Co., 9 Cir., 1938, 96 F.2d 197; International Association of Machinists, etc., v. National Labor Relations Board, 1939, 71 App.D.C. 175, 110 F.2d 29.

back upon every allegation of a shift in membership. But it is to be noted that here the allegation of these intervening petitioners was made and verified at the time of the hearing by the trial examiner of the Board. In addition, the order to bargain with the union clearly affected the rights of apparently innocent absent parties, namely, the intervenors and the employees they represented.[4] There is nothing expressed or implied in the evidence to show that the intervenors were in any way being prompted or directed by the management. If that had been the fact it could have been brought out in the hearing which the Board refused to allow.

The Board contends that the committee's request that the court order an election is foreclosed by the decisions of the Supreme Court of the United States. National Labor Relations Board v. Falk Corp., 1940, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; National Labor Relations Board v. Bradford Dyeing Ass'n, 1940, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226. We do not agree with that interpretation of these decisions. A situation quite similar to the one presented here was before the Eighth Circuit in Hamilton Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 1939, 104 F.2d 49. The court said: "Having in mind that it is the fundamental policy of the Act to permit employees freely to choose their representatives, it follows that the employees have a right to change their choice, and when that fact has been brought sharply to the attention of the Board, as in this case, it was, we think, the duty of the Board to investigate the claim. * * * Yet the Board arbitrarily refused to consider or investigate this claim, but entered its order requiring the employer to recognize the Union as the exclusive bargaining representative of the employees." 104 F.2d page 55.

The court further said: "We are of the view that it would be arbitrary and unfair, and not in keeping with either the letter or the spirit of the Act, to require the employer and its employees to conduct their negotiations through an agency not fairly representing a majority of the employees. In the face of the record as it stands, it can not be assumed that the Union is now the accredited representative of the employees, but the showing made, and it stands without dispute, is at least sufficient to require investigation and to cause a court of equity to inquire whether an order requiring both the employer and the employees to recognize the Union as the bargaining agency should be enforced in the face of circumstances making such enforcement unwise, if not illegal."

The Second Circuit, likewise, had a similar problem in National Labor Relations Board v. National Licorice Company, 2 Cir., 1939, 104 F.2d 655. The affirmance of the order to bargain was conditioned upon the holding of an election. While this decision subsequently was reviewed by the Supreme Court of the United States[5] this point was not passed upon.

Since the argument in the principal case the Supreme Court has decided on November 12, 1940, the case of International Association of Machinists, etc., v. National Labor Relations Board, 61 S.Ct. 83, 85 L.Ed. ——. We do not find in the opinion of the court in that case anything which throws doubt about the soundness of the conclusion here reached. It is to be noted that in that case there was clear evidence of assistance by the employer to the petitioning union in its organizational drive, and therefore it was clear that if it did represent a majority, it was not an uncoerced majority. There is no such evidence in this case with respect to the position of the intervenors. Furthermore, in the International Association of Machinists case the contention that the petitioning union represented a majority was first made after the hearing had been held, although it had been allowed to intervene. As has been pointed out above, such a situation presents entirely different considerations from that here present.

The language of the statute[6] in providing for the selection of representatives of employees for collective bargaining allows alternative methods for ascertaining such representatives. One is by a secret ballot of employees; the other is to utilize "any other suitable method". In view of this language and its application

---

[4] Compare Consolidated Edison Company v. National Labor Relations Board, 1938, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 with National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 1938, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307 and National

Licorice Company v. National Labor Relations Board, 1940, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799.

[5] 1940, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799.

[6] § 9 (c), 29 U.S.C.A. § 159 (c).

by the Supreme Court in National Labor Relations Board v. Falk Corporation, 1940, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396, we believe it is within the Board's and not the court's, discretion to select the method for determining the bargaining representative. That part of the Board's order requiring the company to bargain with the union will be affirmed and enforced therefore upon the condition that the Board first ascertain through an election or "any other suitable method" that the union is still the free and untrammeled choice of the employees as their bargaining agent.

### Notices to be Posted.

The petitioners object to a portion of the Board's order requiring the posting of notices on the ground that it requires them impliedly to admit that they have been guilty of unfair labor practices. We do not understand the argument to go to the length of opposing the posting of any notices. It becomes unnecessary to consider the petitioners' point in view of the Board's willingness that the order be modified to the effect that the company post notices "stating that they will not engage in the conduct from which they are ordered to cease and desist in paragraphs 1(a) and (b) and that they will take the affirmative action set forth in paragraph 2(a) of this Order."

We do, however, modify this provision by relieving the employer of the obligation to post notices stating it will not engage in conduct prohibited by paragraph 1(a) and that it will take the affirmative action set forth in 2(a) of the order, until the conditions upon which those parts of the order are to be enforced have been met. A decree will be entered enforcing the order of the Board upon the conditions and to the extent herein indicated.

JONES, Circuit Judge (dissenting in part).

The decree which the majority directs be entered conditions enforcement of the Labor Board's order upon a redetermination by the petitioners' employees of their majority choice of a bargaining representative. Upon evidence, which the majority of this court deem sufficient and in which I concur, the Board found the petitioners guilty of unfair labor practices. This conclusive finding and the fact that at the time of the unlawful practices there was a duly designated bargaining representative for the unit deny justification for the condition now imposed. Any defections in employee support of the already designated bargaining agent were the result of the petitioners' illegal conduct. In such circumstances, our direction that the bargaining agent's majority representation be reconfirmed as a condition precedent to enforcement of the Board's appropriate order may readily serve to thwart consequential and effective administration of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., which the law commits to the responsibility of the Labor Board. National Labor Relations Board v. Bradford Dyeing Association, 310 U.S. 318, 342, 60 S.Ct. 918, 84 L.Ed. 1226. Consequently, I am constrained to dissent to the extent of the inclusion of the condition in this court's decree of enforcement.

On January 19, 1938, the Textile Workers Organizing Committee, an affiliate of the C. I. O., (later known as Textile Workers Union of America, C. I. O.) was designated as the bargaining representative for the production employees in the petitioners' plant at Philadelphia. The designation, which was immediately certified to the petitioners and to the union, was determined by the secret ballot of the petitioners' employees at an election duly held under the auspices of the Mayor's Labor Board of the City of Philadelphia pursuant to a written agreement between the petitioners and the union entered into on January 17, 1938. The petitioners expressly agreed to be bound by the result of the election and they further agreed that, if the union should receive a majority of the votes cast for bargaining representatives, they would negotiate with the union "with respect to any differences that may arise between the production employees and the management". To this day, no one has ever assailed either that election as not being truly indicative of the majority's untrammelled will or the designation of the bargaining representative as a result thereof.

In the year following the election, numerous conferences were held between petitioners and representatives of the union but to no avail so far as collective bargaining was concerned. For this condition the Board found the employers responsible and the finding is supported by the evidence. The fact is that, upon two occasions, the petitioners promulgated orders, respecting a wage cut in one instance and weekly hours of work in the other, with-

out even notifying the bargaining representative in advance of their intended action, notwithstanding both matters were proper subjects for collective bargaining.

Following the latter occurrence, the union filed formal charges with the Labor Relations Board alleging that the petitioners had been guilty of unfair labor practices in violation of the National Labor Relations Act. Thereon, the · Board on February 28, 1939, issued its complaint directed to the petitioners. The answer of the petitioners denied the charges and alleged that the union no longer represented a majority of the petitionters' employees. The amenability of the petitioners to the provisions of the National Labor Relations Act, and hence, the jurisdiction of the Labor Board, is conceded. A hearing was duly held and an intermediate report of the trial examiner was thereafter filed. The petitioners (respondents below) offered no evidence to support their allegation that the union no longer represented a majority of their employees. As pointed out by the Board, "the only evidence in the record indicates that the Union's majority status continued to the date of the complaint herein and, except for the effect of the respondents' unfair labor practices, thereafter". From this finding, the Board justifiably concluded "that on January 19, 1938, and at all times thereafter, the union was and that it is the duly designated representative of the majority of the employees of the appropriate unit for the purposes of collective bargaining". This conclusion necessarily followed as a matter of law under the rule uniformly obtaining. National Labor Relations Board v. Bradford Dyeing Association, supra, 310 U.S. at pages 339 and 340, 60 S.Ct. 918, 84 L.Ed. 1226; M. H. Ritzwoller Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 432, 437, 438; National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 690; Bussmann Mfg. Co. v. National Labor Relations Board, 8 Cir., 111 F.2d 783, 788; International Ass'n of Machinists, etc., v. National Labor Relations Board, 71 App.D.C. 175, 110 F.2d 29, 33; National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640; National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678, 681; National Labor Relations Board v. Biles-Coleman Lumber Co., 9 Cir., 96 F.2d 197, 198; National Labor Relations Board v. Remington-Rand, Inc., 2 Cir., 94 F.2d 862, 870.

However, at the hearing before the trial examiner, a committee of five employees purporting to represent approximately 150 of the petitioners' employees (more than a majority) petitioned the examiner for leave to intervene in the proceeding "and, if necessary, to present testimony * * *". The examiner denied intervention both to the committee and to the individual employees whom the committee purported to represent as evidenced by a signed petition. The Board approved the action of the trial examiner in such regard and, in so doing, I think acted properly. The proceeding was upon a complaint which ran at the instance of the union against the employers to redress the latter's alleged unfair labor practices. Thus, the issue was drawn between the union and the employers and none other were necessary parties to the record. National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., et al., 303 U.S. 261, 271, 58 S.Ct. 571, 82 L. Ed. 831, 115 A.L.R. 307; National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 362, 60 S.Ct. 569, 84 L.Ed. 799.

Although the question whether the bargaining agent no longer represented a majority was not properly an issue in the proceeding before the Board, it intrudes here by reason of our allowance to the independent committee of leave to intervene in the hearing upon the employers' pending petition to this court to set aside the Labor Board's order. The improvidence of our action in such regard could yet be rendered harmless if we would now but deny standing to the. intervenors and enforce the Board's order as the record otherwise requires. The Board acted within its power upon a complaint of unfair labor practices on evidence adduced at a hearing which comported "with the standards of fairness inherent in procedural due process", made "findings based upon substantial evidence" and "ordered an appropriate remedy". Our duty to enforce the Board's order in such circumstances has been plainly stated. National Labor Relations Board v. Bradford Dyeing Ass'n, supra, 310 U.S. at page 342, 60 S.Ct. 918, 84 L.Ed. 1226.

The ordinary and instinctive desire to make sure that a designated bargaining agent actually represents a majority furnishes no excuse for ignoring or failing to observe the very essential requirement that the will of those composing the majority shall·be untrammelled. All we have before us (and that, dehors the record certified by

the Board) to suggest that the designated bargaining agent in this case may no longer represent a majority is a petition signed by approximately 150 of the employees in the unit. That petition, at best, is evidence of no more than that 150 of the employees signed it. There is no evidence that their signing was an act of their untrammelled will. The established unfair labor practices of the employers suggest to the contrary, as the law appropriately recognizes. Cases cited ante. For a committee, openly adverse to the bargaining agent, as were their employers, to lay before an employee a petition for his signature affords little free choice as to whether he will or will not sign it. But, in any case, where the Board has occasion to correct or abate unfair labor practices, the justification for or propriety of redetermining the employees' choice of a bargaining agent is for the Board and not the court. International Association of Machinists, etc. v. National Labor Relations Board, 61 S.Ct. 83, 85 L. Ed. ——.

Once the oppressive effect of the proven unfair labor practices in this case has been removed, which the Board's order is intended to accomplish, any desire on the part of a majority of the employees to change their bargaining agent can be effectuated by application to the Board under § 9(c) of the Act. International Association of Machinists, etc., v. National Labor Relations Board, supra; Bussmann Mfg. Co. v. National Labor Relations Board, supra, 111 F.2d page 788. But, the coercive effect of the employer's conduct must first be removed. National Labor Relations Board v. Somerset Shoe Co., supra, 111 F.2d page 690. Otherwise the employees' will cannot be deemed to be untrammelled.

As authority for the imposition of the condition, the majority rely on Hamilton-Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 104 F.2d 49, and National Labor Relations Board v. National Licorice Co., 2 Cir., 104 F.2d 655, 658. In the Hamilton-Brown Shoe Co. case, the employer had furthered a company union. The Board ordered the disestablishment of that union and the reinstatement of the employees who had been discharged for refusing to join it. Both of these requirements of the Board, the court enforced. But, as two other unions each claimed to represent a majority of the employees, the court directed that the Board determine and certify the employees' majority choice. It may be pointed out that in the Hamilton-Brown Shoe Co. case there had been neither a formal designation of a bargaining representative nor an acceptance by the employer of an undominated one prior to or during the employer's commission of the alleged unfair labor practices. The case is therefore distinguishable from the present on that ground at least. In the National Licorice Co. case the Circuit Court of Appeals for the Second Circuit, while conditioning its enforcement of an order of the Board, recognized that a designated bargaining representative has "a continued presumptive authority which the employer must overcome by evidence", citing its own decision in National Labor Relations Board v. Remington-Rand, Inc., 2 Cir., 94 F.2d 862, 869. Nor may it be entirely without significance that upon review of the decision in the National Licorice Co. case, supra, the Supreme Court noted that the employer had not been hurt by the court's directing an election and that the Labor Board had "not petitioned for certiorari and does not complain of this direction". National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 359, 60 S.Ct. 569, 575, 84 L. Ed. 799.

For the reasons given, it is my opinion that the Board's order should be enforced without the imposition of the condition.

## On Rehearing.

Before BIGGS, MARIS, CLARK, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

█ Upon petition for rehearing, a reargument of the instant matter before all five judges of the court in active commission was ordered pursuant to Rule 4(1) of this court. The validity of the rule, which allows for a sitting of the court en banc, was recently considered and unanimously confirmed by us in the case of Commissioner of Internal Revenue v. Textile Mills Securities Corporation, 3 Cir., 117 F.2d 62. Nothing need now be added to what was then said in such regard. It may be observed, however, that the present is but another instance of the justification for the rule. Its use removes any possibility that the majority opinion of the court, when composed as ordinarily of three judges, may conflict with the majority opinion of the court when composed of one of the same judges and the two remaining judges of the

court. The majority opinion of all will be binding upon all regardless of the views of individual judges.

Coming to the subject matter of the present reargument, we are unanimous 'in the opinion (as were the members of the court when the case was originally heard) that the evidence fully sustains the Board's findings that the employers (petitioners here) refused to bargain collectively in violation of Sec. 8(1) and (5) of the National Labor Relations Act[1] and that the Board's consequent order[2] was appropriate to the findings.

The one question still remaining is whether, in the face of our affirmation of the Board's findings, we may, yet, condition enforcement of the Board's order upon the result of a redetermination by the Board that the designated bargaining agent continues to be the employees' majority choice. Stated otherwise, may we, upon a record which fully establishes the employers' guilt of the unfair labor practices charged, obviate or impair that portion of the Board's order which directs that the employers bargain collectively with the employees' designated agent as the exclusive bargaining representative of the petitioners' employees engaged in production in their Philadelphia plant.

The designated agent (Textile Workers Union of America (C. I. O.), formerly Textile Workers Organizing Committee) was selected as the exclusive bargaining representative of the petitioners' production employees by their secret ballot at a formal election duly held pursuant to a written agreement between the petitioners and the union. Thence followed the employers' course of unfair labor practices which the Board has found were continued down to the filing of the Board's complaint. The employers, in their answer to the complaint, not only admitted the bargaining agent's due designation but also admitted the union's majority status "for a period of time thereafter, not exceeding one year". This admission, of itself, carried the bargaining agent's majority support (despite the employers' concurrent unfair labor practices) down to within a few weeks of the filing of the complaint. And, although the employers also alleged in their answer that the bargaining agent lacked majority support of the petitioners' production em-

ployees *when the complaint was filed,* they offered no proof to support the allegation.

The suggestion, that this court, upon a review of the Board's order, should condition its enforcement upon a redetermination of the bargaining agent's majority support, rests upon the fact that at the hearing on the complaint a committee of five of the petitioners' employees sought leave to intervene in behalf of themselves and one hundred forty-five other employees (more than a majority) who had signed a paper designating the five committee members "as our representatives to appear before the National Labor Relations Board to represent us *in the matter of the complaint* filed by the Textile Workers Organizing Committee * . * * ." (Emphasis supplied.) We make no point, however, of the petitioners' failure to offer any proof of the alleged loss of the bargaining agent's majority nor of the insufficiency of the specific designation of the committee so far as any expression by the employees of a desire for change in *bargaining representative* is concerned. We shall treat with the matter as if the petitioners or the committee or both could have shown that, because of defections, the union's membership at the time of the hearing represented less than a majority of the petitioners' employees. The cause of any such loss of support remains important, none the less, and the proven unfair labor practices of the employers are present to supply a legally sufficient cause.

The trial examiner denied leave to intervene to both the committee and the individual signers of the committee's designation; and the Board approved the trial examiner's action. In this, we think the Board acted properly. If the intervention was sought merely that the committee might be heard in the matter of the complaint of the unfair labor practices (which is really all the designation of the committee purported to authorize), the intervenors were unnecessary parties. The issue was properly joined between the Board and the employers, as contemplated by the Act (Sec. 10 (b), by the service of the Board's complaint upon the employers to which the latter filed answer as provided for by the Act. No one else was a necessary party to the proceeding. National Labor Relations Board v. Pennsylvania Greyhound Lines,

---

[1] 49 Stat. 449 et seq., C. 372, 29 U.S. C.A. § 151 et seq.

[2] The Board's order is quoted in full in

footnote 1 of the original opinion for this court at page 488.

Inc., et al., 303 U.S. 261, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 362, 60 S.Ct. 569, 84 L.Ed. 799. Moreover, the right to intervene on the part of those who are not necessary parties rests, under the Act (Sec. 10(b), "In the discretion of the member, agent or agency conducting the hearing or the Board * * *." The denial of leave to intervene could not, therefore, constitute legal error. If, however, the intervention was desired by the committee to prove what the employers had alleged but failed to support, namely, that the bargaining agent no longer represented a majority of the petitioners' employees, that matter was immaterial to a complaint proceeding (under Sec. 10) for the abatement and dissipation of unfair labor practices such as are denounced by Sec. 8. And, even if the bargaining agent's status were an issue, the Board was warranted in treating the asserted loss of the agent's majority as of no material value because of the natural influence of the unfair labor practices in the employers' domination over and coercion of their employees. In any view, therefore, the Board acted properly in denying the committee leave to intervene.

In International Association of Machinists, Tool & Die Makers Lodge No. 35 v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 86, 85 L.Ed. —, certiorari was there granted, partly, as the Supreme Court expressly notes, "because of an asserted conflict between the decision below" in that case and the case of Hamilton-Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 104 F.2d 49, with respect to "whether the Board had authority to require the employer to bargain with that [particular] industrial unit, despite a claim submitted to the Board by the craft unit before the order issued that the latter then had been designated by a majority of all the employees." Also, 311 U.S. 72, 61 S.Ct. at page 89, 85 L.Ed. —, it is stated that "Petitioner challenges the order directing the employer to bargain exclusively with U. A. W., on the ground that prior to the issuance of the order petitioner had obtained an overwhelming majority of the production employees and had so notified the Board. * * * [Petitioner] contends that the Board on receipt of the notification should have ordered an election or at least have made an investigation." Answering both the challenge and the contention, Mr. Justice Douglas, speaking for the Supreme Court, said at page 89 of 61 S.Ct.,—"We agree with the court below that the Board in failing to act on this request did not commit error. This was not a certification proceeding under § 9(c); it was an unfair labor practice proceeding under § 10. Where as a result of unfair labor practices a union cannot be said to represent an uncoerced majority, the Board has the power to take appropriate steps to the end that the effect of those practices will be dissipated. That necessarily involves an exercise of discretion on the part of the Board—discretion involving an expert judgment as to ways and means of protecting the freedom of choice guaranteed to the employees by the Act. It is for the Board not the courts to determine how the effect of prior unfair labor practices may be expunged."

Here, likewise, the Board's order was entered in a proceeding instituted under Sec. 10 for the abatement and correction of unfair labor practices as defined in Sec. 8. The order, itself, and the fact that the Board treated as currently immaterial the alleged loss of the bargaining agent's majority support indicate that it was the Board's view that the way to dissipate the unfair labor practices and to provide against their recurrence was to require the petitioners to cease and desist from the unfair practices and thenceforth to bargain collectively with the already accredited bargaining agent. That is precisely what the Board ordered. Its action constituted an exercise of its discretion under the Act. With that discretion, a court may not properly interfere, the Board having acted within the authority conferred by the Act (Sec. 10) which empowers the Board "to prevent any person from engaging in any unfair labor practice (listed in section 8 [158]) affecting commerce." And, that power is "exclusive."

We can perceive no material distinction between the present and the Machinists case. The fact that there was employer assistance to the bargaining agent's rival in the Machinists case was but evidence of the employer's unfair labor practices. The thing of importance is the effect of such practices upon the employees' freedom of choice and not the particular forms by which the unfair practices are evidenced. Nor is it important that the offer to prove the bargaining agent's loss of majority support was not made in the Machinists case

until after the hearing before the Board had been concluded, while here the offer was made at the hearing. The Board had not entered its order in the Machinists case when the offer was made. Proof could still have been produced and received if the Board was under any legal compulsion to receive it. But, obviously, no such duty rested upon the Board. The Supreme Court said (61 S.Ct. page 90) "the failure of the Board to recognize petitioner's notice of change was wholly proper." And, the same is equally true here.

The Machinists case points out the immateriality of an asserted loss of a bargaining agent's majority to the issue raised by a complaint based upon the employer's unfair labor practices, except, of course, in so far as the Board in its uncontrolled discretion may deem the agent's status worthy of investigation and consequent action. And, where the Board passes over the agent's support as being presently of no moment, the Act, as observed in the Machinists case, provides other procedure for the resolution of the independent problem. As there said at page 90 of 61 S.Ct., "Sec. 9 of the Act provides adequate machinery for determining in certification proceedings questions of representation after unfair labor practices have been removed as obstacles to the employees' full freedom of choice."

But, aside from the immateriality of an inquiry into a bargaining agent's status, except as already noted, where the agent's majority support has been assailed in a complaint proceeding for the dissipation of unfair labor practices, Courts of Appeals generally have affirmed findings made by the Board upon the presumed continuity of the bargaining agent's majority support, there being unfair labor practices by the employer contemporaneously present. M. H. Ritzwoller Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 432, 437, 438; Continental Oil Co. v. National Labor Relations Board, 10 Cir., 113 F.2d 473, 481; National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 690, 691; Bussmann Mfg. Co. et al. v. National Labor Relations Board, 8 Cir., 111 F.2d 783, 788; International Ass'n of Machinists,

Tool and Die Makers Lodge No. 35 v. National Labor Relations Board, 71 App.D.C. 175, 110 F.2d 29, 33; National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640.[3] In National Labor Relations Board v. Bradford Dyeing Association (U.S.A.) et al., 310 U.S. 318, 340, 60 S.Ct. 918, 929, 84 L.Ed. 1226, Mr. Justice Black, speaking for the Supreme Court, expressly approved the Board's conclusion in that case that "The unfair labor practices of the respondent [employer] cannot operate to change the bargaining representative previously selected by the untrammelled will of the majority." The fact that in the Bradford case the employer had promoted a labor organization rival to the employees' chosen representative has no material bearing on the principle involved. As we have already pointed out in connection with the Machinists case, the crucial thing is the presence of unfair labor practices by the employer regardless of what their form or character may be.

▇ The rule of presumed continuity of representative status is but the logical consequence of the realities of the situation. It recognizes and accords due effect to the fact that, where an employer is opposed to the unionization of his employees and, by his refusal to bargain collectively, prevents the exercise of their rights under Sec. 7 of the Act, subtle and covert conduct may suit his purposes of opposition as well as, if not better, and certainly with less chance of detection, than open and direct acts of hostility. But, the legal effect of the conduct, like its intended purpose and practical result, is no different in the one instance than in the other. To hold otherwise, where unfair labor practices exist, and thus place upon a bargaining agent the burden of proving affirmatively that the defections producing the representative's loss of majority support were brought about by the employer's open and direct assault on the representative's membership, would be to advantage the employer because he violated the Act. Continental Oil Co. v. National Labor Relations Board, supra; National Labor Relations Board v. Highland Park Mfg. Co., supra. The effect, therefore, upon the agent un-

---

3 Compare also National Labor Relations Board v. Whittier Mills Co. et al., 5 Cir., 111 F.2d 474, 478; National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 790; National Labor Relations Board v. Biles-Coleman Lumber Co., 9 Cir., 96 F.2d 197, 198; National Labor Relations Board v. Remington-Rand, Inc., 2 Cir., 94 F.2d 862, 869, 870, certiorari denied 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540.

ion's membership, of an employer's refusal to bargain collectively is at all times for the Board's consideration and appraisal. Machinists case, supra; Bussmann Mfg. Co. et al. v. National Labor Relations Board, supra; National Labor Relations Board v. Somerset Shoe Co., supra.

■■■ In the instant case, there were other unfair labor practices by the employers, attending their refusal to bargain collectively, which were particularly stigmatizing to the union's standing as an employee representative. During the period when the bargaining representative's majority admittedly still continued, the employers made a wage cut and a change in the weekly hours of work not only without notifying the bargaining agent in advance of their intended action but even without informing the agent of the action when taken. Both matters were eminently proper subjects for collective bargaining. Globe Cotton Mills v. National Labor Relations Board, 5 Cir., 103 F.2d 91, 94. Yet, the employers deliberately by-passed their employees' own chosen representative for collective bargaining. This conduct, in particular, could not have been other than in impairment of the union's prestige among the petitioners' employees and, therefore, destructive of the union's membership whether or not it was so intended by the petitioners.

■■■ As was said in the Machinists case (61 S.Ct. page 88), "The existence of unfair labor practices throughout this whole period permits the inference that the employees did not have that freedom of choice which is the essence of collective bargaining." The want of freedom of choice, thus inferable, is as material to employee withdrawals of support from the designated bargaining agent as it is to employee affiliation with a different representative. The inference here serves to impugn directly the committee designation which the employees signed in ostensible partial repudiation of the bargaining agent which had been their majority choice when secret ballot was their mode of expression. Until the unfair labor practices and their effect have been completely eradicated, the freedom of choice essential to the employees' uncoerced expression of their desire for a continuance of or a change in bargaining agent is not possible. Machinists case, supra. While the practices endure, no majority can be said to be uncoerced except the last majority chosen by the free and untrammeled will of the employees. It is proper, therefore, for the Board, in its effort to wipe away the effect of the unfair labor practices, to direct the employers to bargain collectively with the agent which, undeniably, had been selected by the free will of the employees although it then be asserted that the agent no longer commands a majority. Cf. National Labor Relations Board v. Somerset Shoe Co., supra; Bussmann Mfg. Co. et al. v. National Labor Relations Board, supra; M. H. Ritzwoller Co. v. National Labor Relations Board, supra; National Labor Relations Board v. Biles-Coleman Lumber Co., supra.

■■■ Of the cases where, upon review of Board orders, the courts have directed a redetermination of the bargaining agent, the ruling in the Hamilton-Brown Shoe Co. case, supra, has now been overruled by the Supreme Court in the Machinists case, supra. And, while National Labor Relations Board v. National Licorice Co., 2 Cir., 104 F.2d 655, was later reviewed by the Supreme Court (309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799), the direction of the Circuit Court of Appeals that the bargaining agent be redetermined was then no longer involved. The Supreme Court notes (309 U.S. page 359, 60 S.Ct. page 575, 84 L.Ed. 799) that the Labor Board had "not petitioned for certiorari and does not complain of this direction". In Stewart Die Casting Corporation v. National Labor Relations Board, 7 Cir., 114 F.2d 849, 858, the court conditioned enforcement of the Board's order upon a redetermination of the bargaining agent particularly because of the length of time which had elapsed between the hearing and the Board's order to bargain. However, it would seem, if the designation of a bargaining agent is to be considered stale, the matter would properly be for the Board to weigh along with all factors directly pertinent in the discharge of its duty to dissipate unfair labor practices. The Act prescribes no period of limitations to the continuity of a bargaining agent's majority status; and it is not easy to see how the courts may outlaw the choice of a bargaining agent freely made. After all, the selection of a representative for collective bargaining is a matter for the employees of an appropriate unit and for none other. National Labor Relations Board v. Highland Park Mfg. Co., supra. Until they take action, as permitted by the Act (Sec. 9), to express a new choice, the continuity of the bargaining agent's ma-

jority must be presumed. National Labor Relations Board v. Whittier Mills Co. et al., supra; National Labor Relations Board v. Remington Rand, Inc., supra.

▇▇ It is apparent to us that the Board was fully justified in finding that "the only evidence in the record indicates that the Union's majority status continued to the date of the complaint herein and, except for the effect of the respondents' [present petitioners'] unfair labor practices, thereafter". From that finding the Board's further conclusion reasonably followed,—"that on January 19, 1938, and at all times thereafter, the Union was and * * * is the duly designated representative of the majority of the employees in the appropriate unit for the purposes of collective bargaining". Accordingly the bargaining requirement in the Board's order was proper and should now be enforced by us without condition or other imposition.

One other matter respecting the Board's order calls for comment. The petitioners complain of the direction in the order that they post notices stating that they will cease and desist from the unfair labor practices whereof the Board found them guilty. The petitioners urge that their posting of such notices would carry with it an implied admission of guilt which they deny. While the form of the particular notice has been held valid,[4] certain courts have seen an impropriety in the inclusion of the cease and desist provision in the notice which the employer is required to post.[5] However, the matter need not give petitioners any further cause for anxiety. The Board states in its brief that in order "to avoid claims of unfair imposition such as were made by the petitioners here, the Board, after the issuance of its order herein, changed the form of notice generally required." As a consequence, the Board requests that, in accordance with its new practice, the notice provision in the order under review be now amended so that paragraph 2(b) thereof shall be and read as follows: "(b) Post immediately in conspicuous places in and about their plant no-

tices to their employees, and maintain said notices for a period of at least sixty (60) consecutive days from the date of posting, stating that they will not engage in the conduct from which they are ordered to cease and desist in paragraphs 1(a) and (b) and that they will take the affirmative action set forth in paragraph 2(a) of this Order;".

▇▇ The amendment is hereby allowed; and, as so amended, the order will be enforced. A decree may be submitted accordingly.

GOODRICH, Circuit Judge (dissenting in part).

The issue between the majority and the dissent in this case is a narrow one. It has to do only with that part of the former opinion which conditioned the enforcement of the order upon redetermination by the Board of the bargaining agent. This point we do not believe to be settled by International Association of Machinists, etc., v. National Labor Relations Board, 1940, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. ——. The opinion in that case devotes considerable space to the evidence that the rival union had been, at least, assisted by the employer. Where this circumstance exists or where the loss in membership of the union once having the majority has been influenced by unfair labor practices on the part of the employer there is, to us, a situation which seems quite different. Accordingly when the employees sought to intervene at the original hearing in order, inter alia, to show that they had of their own free will withdrawn from the union the Board should have permitted them to do so since the character of the Board's order against the employer was directly dependent on whether the union was still entitled to represent the employees.

There is no competent evidence that the loss in union membership was influenced by the employer's unfair labor practice. Even if the Board may make the assumption that there is a causal relationship between unfair labor practices on the part of the employer and loss in union membership

---

[4] National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 462, 463, 60 S.Ct. 307, 84 L.Ed. 396; National Labor Relations Board v. Bradford Dyeing Association, supra (impliedly, 310 U.S. at pages 322 and 343, 60 S.Ct. 918, 84 L.Ed. 1226); National Labor Relations Board v. Somerset Shoe Co., supra, 111 F.2d at page 691.

[5] Hartsell Mills Company v. National Labor Relations Board, 4 Cir., 111 F.2d 291, 293; Art Metals Construction Co. v. National Labor Relations Board, 2 Cir., 110 F.2d 148, 151; Swift & Co. v. National Labor Relations Board, 10 Cir., 106 F.2d 87, 94; National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678, 681.

when the unfair practices are contemporaneously present, certainly there is no irrebuttable legal presumption of cause and effect. We do not see how the testimony of those who perhaps would testify to the contrary may fairly be rejected.

The majority opinion gives to a unit once selected the power to be the exclusive bargaining agency for an indefinite time regardless of whether at the time of the hearing this unit may represent only a very small minority of the employees. If the dissipation has come about by unfair labor practice on the part of the employer it may well be that the policy of the act requires election to be treated as conclusive until those practices are purged. But where there is no evidence of the sort, and evidence to the contrary is rejected, it seems to us a very important difference exists. The majority opinion points out that the employees may under § 9 express a new choice. But the very enforcement of an order directing collective bargaining with one agent necessarily gives to that agent that possession which always has been regarded as nine points of the law. Such possession is just as valuable in collective bargaining as it is in the retention of tangible property. It seems to us that to award it to an admitted minority against what is claimed to be an uncoerced majority is a turning away from those realities which the majority opinion purports to consider.

MARIS, Circuit Judge, concurs in this dissent.